GEORGE L. HASSELBACK, Esq.
O'Connor Berman Dotts & Banes
Second Floor, Nauru Building
P.O. Box 501969
Saipan, MP 96950
Telephone No. (670) 234-5684
Facsimile No. (670) 234-5683

Attorneys for Plaintiffs Moses T. and Qianyan S. Fejeran

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| MOSES T. FEJERAN and QIANYAN S. FEJERAN, <br><br> Plaintiffs, <br><br> vs. <br><br> AVIATION SERVICES (CNMI), LTD. d.b.a. FREEDOM AIR, <br><br> Defendant. | CIVIL ACTION NO. 05-0033 <br><br> DECLARATION OF GEORGE L. HASSELBACK IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE <br><br> Judge: Alex R. Munson <br><br> Date : March 15, 2007 <br> Time : 1:30 p.m. |

I, George L. Hasselback, declare under the penalty of perjury that the following is true and based upon my personal knowledge, except where noted otherwise, and if called to testify, I could do so competently:

1. In my capacity as an associate for O'Connor, Berman, Dotts & Banes (counsel of record for the Plaintiffs in the above-captioned matter), I have attended several pre-trial conferences with this Court and have discussed arrangements for discovery with opposing counsel on various occasions.

**There Is No Court Order Stipulation Or Even An Agreement Setting A Deadline for Expert Disclosure**

2.  I was responsible for arranging for the inspection of Defendant's aircraft by Plaintiffs' expert witness Dr. Perez. Subsequently, in discussions regarding a joint motion to vacate the previous trial date, counsel for Defendant and I explored various options regarding the conduct of expert discovery.

3.  Contrary to defense counsel's assertion, the parties never set a September 30, 2006 deadline for the disclosure of any expert report from Plaintiffs' expert witness Mr. Frank Perez ("Dr. Perez"). Instead as stated in my Declaration In Support of Joint Motion for New Trial:

> "Dr. Perez… has indicated *that the earliest* by which he will be able to complete his report is mid to late September. Additionally, Dr. Perez will need time to evaluate the opinions offered by Defendant's liability expert, Richard Gill and formulate any rebuttal to those opinions…"

*See* Exhibit A (emphasis added)

**-- We Only Discussed *Possibly* Disclosing Dr. Perez' Report By September 30, 2006**

4.  For the purposes of the joint motion to vacate the previous trial date, I estimated that given the date of the inspection of the aircraft (August 1, 2006) it would take at least sixty days for Dr. Perez' report to be completed.

5.  Additionally, to the best of my recollection I specifically told opposing counsel *that this was an estimate* and it would be subject to confirmation by Dr. Perez and be subject to any deadlines set by this Court.

6. Certainly I never agreed to any firm deadline for producing Dr. Perez' report. In any case, there was no stipulation or order or even follow up discussions as to this *estimated* date for production.

**I Informed Defendant We Needed To Conduct Further Discovery**

7. In any case, back on August 21, 2006, I told Mr. Ledger we would be serving additional Discovery requests "in light of the inspection of the [aircraft's] stairway by Dr. Perez" to which defendant responded "Go ahead… and let me reserve Freedom Air's position until after seeing the interrogatories." *See* Exhibit B.

**Both Sides Were Then Distracted By Working Out A New Conference Order**

8. However the parties then became involved in working together to get the trial date continued and to work out new deadlines for discovery etc. These negotiations started in September and resulted in an Amended Case Management Conference Order filed on October 31, 2006. *See* Exhibit C.

**-- The Pretrial Order Does Not Set Any Date For Expert Disclosure**

9. The Amended Case Management Order does not designate any deadline for producing expert reports and gives the parties until June 1, 2001 to conduct expert discovery. *Id.*

10. Hence this Amended Case Management Order was negotiated and resolved *after* the alleged September 30, 2006 deadline.

11. On October 17, 2006, I received an email regarding the new pretrial schedule that the parties were going to submit to the Court. At that time David Banes and I both were involved in a trial in CNMI Superior Court, but I answered this email on October 24, 2006. *See* Exhibit. In that response, I informed opposing counsel that I had followed-up with Dr. Perez regarding the progress of his report and would let opposing counsel know when I heard anything back from him. *See Exhibit D.* Subsequently, I agreed to the pretrial schedule (with a few minor changes) and this was filed with this Court. That schedule set a deadline for the conduct of expert depositions by June 1, 2007. *See Exhibit C.*

12. Significantly, there was no deadline in that Order for producing expert reports. *Id.*

**Dr. Perez Says He Needs Additional Information Before A Final Report Can Be Given**

13. I understand Dr. Perez returned my call to him but I was not available. So he spoke with David Banes.

14. Dr. Perez told Mr. Banes he measured the stairs and they were not uniform. However, Dr. Perez said he needed additional information, as to what standards if any govern the stairs' "hand rail" and he was concerned that there may have been modifications to the stairs based on his previous experiences using the landing and comments by other passengers who have taken the flight in question.

15. Mr. Banes was unaware of my estimated time for producing the report as I did not tell him and there was no order or stipulation to that effect.

16. I next contacted Mr. Ledger in January 2007 related to Plaintiffs' deposing Defendant's employees.

17. On January 10, 2007, counsel responded that before we could depose these witnesses, he wanted Dr. Perez' report. *See* Exhibit *E*.

**We Disclosed Dr. Perez' Findings to Defendant**

18. David Banes wrote back on January 15, 2007 and explained that we had not produced Dr. Perez' report as it did not exist because we needed further discovery. However in that letter we disclosed the substance of Dr. Perez' findings:

> Dr. Perez has come to the general conclusion that they are unreasonably unsafe [sic] because of the measurements of their raise and run.

*See* Exhibit F.

**Even Though Counsel Has The Preliminary Report, Defendant Insists On This Motion**

19. Counsel wrote back stating that unless Dr. Perez produced his report by January 31, 2007, Defendant would request a conference. Defendant again stated "no discovery from Freedom Air employees will be permitted until we have Dr. Perez' report". *See* Exhibit G.

20. On January 17, 2007, Mr. Banes wrote to Mr. Ledger stating Dr. Perez would produce a preliminary report. *See* Banes Decl., Exhibit A.

21. On January 26, 2007, Defendant wrote back admitting the September 30th deadline, "was an informal agreement" and that he knew about the issues with the height of risers and width of treads" as he personally attended the inspection. *See* Exhibit I.

22. We then asked Dr. Perez to put his initial findings in a report.

23. On February 15, 2006, we obtained a written report from Dr. Perez as to his initial findings. We turned this report over to Defendant. *See* Banes Decl. para 2, Exhibits B and C.

24. Defendant's counsel wrote back stating he was going forward with his motion anyway. *See* Exhibit I.

**Defendant Wants To Delay The Trial – They Refuse To Allow Needed Discovery Thus Stopping Dr. Perez From Completing His Report, Then Complain The Report Is Not Yet Finished**

25. Counsel for Defendant will not allow Plaintiff to get discovery needed to complete Dr. Perez – then complains Dr. Perez' report is not yet complete.

26. Defense counsel has informed me that his client will not provide any answers to interrogatories, responses to requests for production or deposition testimony that could be utilized by Dr. Perez (including the information that he needs to complete his report) because of the passage of the September 30, 2006 "deadline."

27. It is my belief that defense counsel misconstrued my estimate of the earliest possible date by which Dr. Perez could complete his report as an agreement that this would be the deadline for disclosure of that report.  There was no such agreement and the parties have never agreed to any deadline for exchange of expert witness reports.

**Just Like The Expert Disclosure Deadline, There Was No Agreement To Producing Plaintiff In Hawaii**

28. Additionally, there has never been any agreement to conduct Plaintiff's Independent Medical Examination (IME) in Hawaii. I believe that defense counsel's misconception arises out of several conversations exploring various options as to the conduct of discovery. I only ever agreed to speak to my client about this option and suggest it to him as a possible way to conduct his IME. Mr. Fejeran is elderly and his knees are troublesome. He has declined this option.

29. Opposing counsel and I had discussed the conduct of Defendants Independent Medical Exam on several occasions (usually, immediately following any status conference with the Court).  I explained that Plaintiff's life-care planning expert, Ms. Doris Schriver ("Ms. Schriver") may have to conduct a face-to-face interview with Plaintiff prior to formulating her opinion. Opposing counsel suggested that we conduct this interview in Hawaii where Defendant's medical expert resides and practices while I agreed in principal with opposing counsel that this may be a way to save on costs to the parties, I nonetheless specifically mentioned that *I had to seek approval from my client and immediate supervisor* (David Banes) at my law firm before agreeing to this arrangement.

30. Subsequently, I have been informed by Ms. Schriver (who anyway lives in Colorado, not Hawaii) that a face-to-face interview with Plaintiff will be unnecessary. Considering this, my client has informed me that he does not wish to incur the expense of conducting such an interview, either in the CNMI, Hawaii or elsewhere.

**Plaintiff Never Agreed To An IME In Hawaii – For Good Reason, He Is Elderly And His Knees Are Troublesome**

31. Furthermore, Mr. Fejeran has informed me that he does not wish to travel to Hawaii for an IME, because extended periods of time in a sitting position cause him extreme discomfort due to his damaged knee, thus making long-term air travel extremely painful.

32. Thus Plaintiff has never agreed to conduct his IME in Hawaii nor did Mr. Banes. I believe that defense counsel has mistaken my representations that I would explore this option with my client as an agreement.

I declare under the penalty of perjury that the foregoing is true, correct and complete to the best of my knowledge.

Dated, February 22, 2007, Saipan, CNMI.

/s/ _____
George L. Hasselback, Esq.