

**George Hasselback <george.hasselback@gmail.com>**

# Fejeran v. Freedom Air

1 message

**David P. Ledger <dledger@carlsmith.com>**                    **Fri, Jan 26, 2007 at 4:17 PM**
To: George Hasselback <george.hasselback@gmail.com>, O'Connor Berman Dotts & Banes
<attorneys@saipan.com>
Cc: "June M.C. Borja" <JBorja@carlsmith.com>

Attention of George Hasselback and David Banes:

Gentlemen: I have your letters date January 15 & 17, 2007.  I intended to respond sooner but was
unable to do so before now.  I will respond to the points raised in your letters in basically the same
order as they are presented.

At this point what was contemplated by each side with regard to the time for Mr. Perez to disclose his
report appears to be in question, but that was not always the case. Given that Mr. Perez had access to
the aircraft approximately six months ago on August 1, 2006, we certainly did not expect to be waiting
until March 1, 2007 for his report. I believe your correspondence file will reflect our expectation of
having his report in a much more timely manner, in particular, by the end of September 2006.
Specifically, soon after Perez' inspection in August 2006 I wrote to Mr. Hasselback asking for
confirmation that Mr. Perez had been retained and requested a timeframe within which to have his
report. Subsequently, on October 17, 2006, I wrote in e-mail to Mr. Hasselback concerning our informal
agreement that Mr. Perez's report was to have been given to us by **the end of September 2006, and
that we were concerned about having sufficient time for rebuttal work.**  A September 30
disclosure would have given Mr. Perez two months to complete his report, August and September.  My
personal notes of conversations with Mr. Hasselback during the time between Perez's August
inspection and my October 17 e-mail reflect the September 30 disclosure agreement. If you have
correspondence which shows otherwise please provide it.

The schedule you have proposed for exchanging expert witness reports provides you with a
tremendous strategic advantage that must be addressed in a manner which is fair to my client.  The
obvious part is that by the time March 1, 2007 rolls around and Mr. Perez produces his report, he, and
you, will have had more than **seven months** to contemplate the content of report, whereas you are
proposing that our expert be given **one month** to travel to Guam, inspect and photograph the
aircraft, prepare a report, and prepare a rebuttal report.  Are you seriously proposing that this is a fair
resolution ? If you are then as they say, no good deed goes unpunished, in particular our having
consented to Mr. Perez's inspection in August 2006  while counting on him and you to respond to our
informal agreement to produce the report by the end of September 2006.  The schedule for expert
witness disclosures proposed by you is, for the foregoing reasons, unacceptable.

That you disclose Mr. Perez' concerns about the height of risers, width of treads, and the railing
comes with little surprise or solace since those items were quite obviously the focus of his inspection,
which I attended and observed but you did not except through a summer hire working for Dan and
Michael Berman.  Mr. Perez took multiple measurements and photographs of these items and
repeatedly went up and down the stair. Last, with regard to discovery you claim to need to supplement
what Mr. Perez already knows, please allow me to point out that I have lost count of how many
times during the first five or six months of 2006 I agreed to Mr. Hasselback taking depositions of
Freedom Air employees, only to never see any of them be Noticed.

Ex. I

Turning to the IME we have requested in Honolulu, your proposal that it be conducted in the CNMI is likewise unacceptable. For starters, Mr. Hasselback has known for several months that our medical expert is in Honolulu, and that we would schedule the IME during the same time Mr. Hasselback was considering to have Mr. Fejeran in Honolulu to be interviewed by Ms. Shriver. We were in agreement that killing two birds with one air travel trip made good sense. Mr. Hasselback agreed that having the IME and Shriver interview in Hawaii at the same time made good sense, and no mention was ever made about the plan being contingent on Mr. Fejeran's ability to travel. Rather, the contingency was always your need for Shriver and if you did not need Shriver then my client would have to pay the entire cost of Mr. Fejeran's trip to Honolulu. Mr. Fejeran's inability or unwillingness to travel, now that you no longer need him to go there, does not ring very true. From our perspective it appears your intention is to deny us the opportunity to complete our medical expert work which needs to wind up with the IME at Dr. Diamond's office in Honolulu. It is disingenuous to think we are going to bring our medical expert to Saipan to conduct an IME, at a cost approaching $8,000, when the cost to have Mr. Fejeran go to Honolulu will be approximately $2,500. Furthermore, Mr. Hasselback clearly understood and conceded that the IME in Honolulu was a reasonable alternative to a local IME, given that there were basically no available local doctors to perform it.

Shifting to your January 17 letter, you correctly note no court-imposed deadline for expert witness disclosures. There is a good reason for that. As noted above, counsel had an informal agreement to disclose Perez's report approximately sixty days after his inspection, that is, the end of September 2006. Again, I refer you to my e-mail of October 17, 2006 to Mr. Hasselback. You also make note of the "additional expense" you will incur to obtain an interim report from Mr. Perez. Please allow me to inform you that the basis of having Mr. Perez inspect the aircraft in August 2006 on short notice was that he "happened to be on Guam" and that an inspection then rather than later would save plaintiff thousands of dollars. Judge Munson agreed with the premise that saving money on experts when saving was possible made good sense for everyone and made it clear that he would have granted an emergency motion to inspect had we not consented. I would venture a guess that you will still be dollars ahead after paying for an interim report. In any event, please do not assume that an "interim report" will solve the problems as we see them.

Bottom line is that we consider Mr. Perez's report to have been due to us September 30, 2006. I am confident my October 17, 2006 e-mail and personal notes will establish this. Otherwise, one would have to assume that my October 17 e-mail referencing an end-of-September disclosure was written during a spell of dementia. In the circumstances, I am of the mind that our refusal to produce our witnesses for deposition, which by your own admission are in part to assist Mr. Perez, is justifiable.

Unfortunately, we do not see how we can possibly agree with the alternatives you have suggested to resolve present discovery issues. Even more unfortunate is that Judge Munson is on medical leave and apparently unavailable for a status conference or to otherwise solve the issues until sometime after March 8, 2007. You have proposed disclosing Perez's report by March 1, 2007. If you do so that may render certain issues moot, but still not others. As for the IME, our perspective is that it be competed in Honolulu as previously planned whether or not Mr. Fejeran will see Ms. Shriver at the same time.

Finally, we do need your decision on Shriver at the earliest possible time.

Regards,

David Ledger
Partner, Carlsmith Ball LLP (Guam, U.S.A.)
Office ph: 671 472 6813, ext. 302
Office fax: 671 477 4375
Mobile: 671 688 3352
dledger@carlsmith.com

agreed to a limited disclosure of experts with reports to follow, but no date ever agreed to or ordered by the court).

The Court sets the trial date and we get the stipulated case management schedule that I have described to you previously. Up until this point, it has always been "well, we'll exchange reports in the future." No firm dates were ever discussed.

George.

[Quoted text hidden]