## I. INTRODUCTION

Defendant Freedom Air asserts in its Opposition that Plaintiffs' Motion must be denied as 1. Defendants did assert the so-called Air Worthiness Doctrine but it was hidden in its general, catch-all defense that the Complaint fails to state a cause of action; 2. Plaintiffs failed to uncover the true-meaning of this affirmative defense only because they failed to conduct any discovery; 3. Plaintiffs' proposed amendment should not be allowed as it would require further discovery or conversely, is simply a new cause of action out of the "same old facts"; and 4. finally, the amendment would be futile as this action is governed by the Warsaw Convention as the flight from Saipan to Rota is an international flight because Defendant's Operations' Manager says it is (without any citation to any relevant case law, FAA regulation or Warsaw Convention language).

Defendant's objections are meritless:  1. a general assertion of failure to state a claim is a motion not an affirmative defense but more importantly did not give Plaintiffs the required "fair notice"[1] required by Rule 8, Fed.R.Civ.Pro. that Defendant was actually asserting a very specific affirmative defense; 2. Defendant has made a serious and material misrepresentation to the Court and also to Plaintiffs: Plaintiffs DID conduct discovery as to this specific affirmative defense in particular and to Defendant's denial of liability in general and were not told anything about the "Air Worthiness Doctrine" - - meaning that if it is true that this defense was always there "for the asking", Defendant committed discovery abuse by actively hiding the true meaning of this affirmative defense from Plaintiffs; 3. no new discovery is necessary as the amended pleading contains no new factual issues; and 4. since the ticket was for a flight from Saipan to Rota and it did not state any of the Warsaw Convention limitations, the Warsaw Convention does NOT apply.

---

[1] *See Wyshak v. City National Bank*, 607 F.2d §24, 827 ((th Cir.1979) and discussion *infra*.

## II. ARGUMENT

**A. An Affirmative Defense Must Be Specifically Plead And A General Statement Like "Failed To State A Cause Of Action" Will Not Suffice.**

Defendant Freedom Air concedes - - as it must - - that it did not specifically assert the so-called "Air Worthiness Doctrine" as an affirmative defense.[2] Instead it asserts that this defense was asserted in its Answer when it pled "that Plaintiff failed to state a claim upon which relief may be granted" Defendant's Opposition, p. 3. Defendant then represents to the Court that Plaintiffs "never conducted discovery on this issue" so Plaintiffs did not uncover the true meaning of this defense only because "they never asked Defendants to explain its position", *Id.* and "[h]ad they [Plaintiffs] served discovery requests regarding defendant's defenses . . . they would have become aware of the aircraft's worthiness much sooner". *Id.* at p.9, lines 5-7. Such an argument must fail as Defendant was required to specifically plead such affirmative defense to give Plaintiffs "fair notice". Also, as explained next, Plaintiffs DID "serve discovery requests" specifically as to this Affirmative Defense and Freedom Air did not "explain its position", which means, in turn, that Plaintiffs' were actively misled by Defendant's responses.

### 1) An Affirmative Defense Must Give "Fair Notice" to Plaintiffs.

Simply put, Defendant's argument never gets off-the ground (no pun intended) as it is not permissible for a defendant to hide a specific affirmative defense under the guise of a vague, catch-all assertion of failure to plead a cause of action. To begin with, the assertion of failure to state a claim defense is a Rule 12(b)(6) motion and not an affirmative defense and is therefore deficient as a matter of law. *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D.Cal. 2005) (Court struck affirmative defense of failure to state a valid claim as its improper affirmative defense as a matter of law).

---

[2] Defendant complains at page 6 of its Opposition that Plaintiffs delayed in bringing this Motion. This is the epitome of chutzpah considering their admitted failure to plead or otherwise inform Plaintiff of their affirmative defense. Defendant says that "movant has the burden of showing some valid reason for delay". *Citing Acosta-Mestre,* 156 F.3d 49 (1st Cir. 1998) and *Whitaker v. City of Houston, Tx.,* 963 F.2d 831 (5th Cir. 1992). The valid reason here is Defendant's lack of disclosure concerning this affirmative defense.

Next, "Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure. Thus, defenses must set forth a 'short and plain statement,' Fed.R .Civ.P. 8(a), of the defense." *Heller Financial, Inc. v. Midwhey Power Co., Inc*., 883 F.2d 1286, 1294 (7th Cir.1989). *See also Woodfield v. Nationwide Mutual Ins. Co*., 193 F.3d 354, 362 (5th Cir.1999) ("An affirmative defense is subject to the same pleading requirements as is the complaint.").

An affirmative defense "must include either direct or inferential allegations respecting all material elements of the defense asserted" and simply naming a legal theory without indicating how it is connected to the case at hand is not sufficient. Therefore an affirmative defense of failure to state a claim, "required a short plain statement of the basis for the defense as is set forth in Rule 8(a)." *Yash Raj Films (USA) v. Atlantic Video* 2004 WL 1200184 (N.D. I11. May 28, 2004). The Ninth Circuit has held that "[t]he key to determining the sufficiency of pleading an affirmative defense **is whether it gives plaintiff fair notice of the defense**." *Wyshak v. City National Bank*, 607 F.2d 824, 827 (9th Cir.1979) (emphasis added).[3]

Here, Defendant asserted just a bare-bones, legal conclusion without any indication as to how it is connected to the case in general let alone a legal theory that somehow Defendant is insulated from liability due to an Airworthiness Certificate and there are no direct or even inferential allegations as to what Defendant meant by this defense. Hence, it does not give Plaintiffs "fair notice" as required by Ninth Circuit precedent and Defendant should not be allowed to assert such a defense at trial as the deadline for discovery and to retain and designate experts has passed.

---

[3] *See also SecuriMetrics, Inc. v. Hartford Cas. Ins. Co.*, 2005 WL 2463749 *2 (N.D.Cal. September 26 2005) (A defense is insufficient if it fails to give the plaintiff fair notice of the nature of the defense); *Sun Microsystems, Inc. v. Datram Corp*., 1997 WL 50272 *3 (N.D.Cal., February 4, 1997) (affirmative defense must be pled with the necessary specificity to give the plaintiff "fair notice" of the defense); *Yash Raj Films (USA) v. Atlantic Video* 2004 WL 1200184 (N.D. I11. May 28, 2004). (purpose of Rule 8 (c) is to give the opposing party notice of affirmative defense and a chance to rebut it).

### 2.  A General Denial Cannot Be Used In Place Of A Specific Affirmative Defense

Because it does not give a plaintiff "fair notice", it is not proper for a defendant to hide a specific affirmative defense under the guise of an affirmative defense that states a failure to state a cause of action. For instance, the First Circuit held that such a vague assertion did not put the plaintiff on notice and so did not allow the defendant to proceed with its affirmative defense:

> **[A]n inquiring court must examine the totality of the circumstances and make a practical, common sense assessment about whether Rule 8(c)'s core purpose-to act as a safeguard against surprise and unfair prejudice-has been vindicated**. In the instant case, however, Reliance did not raise ERISA preemption in its answer, at the pretrial hearings, in the pretrial memoranda, or at any point during discovery, but rather raised it only five days before trial. As this Circuit recently said in another case of waiver, **"[t]he chronology of the case speaks volumes about the lack of timeliness**." *Correa v. Hospital San Francisco*, 69 F.3d 1184, at 1194-95 (1st Cir.1995).
>
> * * *
>
> **The trial court denied leave to amend because of the undue delay by Reliance in raising the issue and the substantial prejudice to Wolf if amendment were allowed. It is well within a court's discretion to find prejudice where the amendment "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation**." *See* 6 Wright & Miller, supra, § 1487, at 623. This is precisely such a case: Reliance sought to change the theory of the case five days before trial, which would have forced Wolf to conduct additional discovery, research, and preparation on the ERISA-related issues. We hold that, based on these considerations, there was no abuse of discretion in denying leave to amend.

*Wolf v. Reliance Standard Life Ins.*, Co., 71 F.3d 444, 450 (1st Cir. 1995) (emphasis added, citation and quotation marks omitted). Or as stated by the Second Circuit Court of Appeals, coming to a similar conclusion as the *Wolf* Court that Defendant's assertion of a failure to plead a cause of action cannot substitute for a specific affirmative defense due to concerns about fairness:

> One of the core purposes of Rule 8(a) is to place the opposing party parties on notice that a particular defense will be pursued so as to prevent surprise or unfair prejudice. **A general assertion that the plaintiff's complaint fails to state a claim is insufficient to protect the plaintiff from being ambushed with an affirmative defense.**

*Saks v. Franklin Covey Co*, 316 F.3d 337, 350 (2nd Cir. 2003) (emphasis added)[4].

As Defendant's conclusory affirmative defense did not give Plaintiffs' fair notice and Plaintiffs will be greatly prejudiced, Defendant should not be allowed to assert it or any other un-named defense at trial.[5]

**B. Plaintiffs DID Conduct Discovery As To Defendant's Denial Of Liability In General And This Particular Affirmative Defense In Particular.**

In a rush to cover its tracks for failing to properly assert this affirmative defense, Defendant points a finger at Plaintiffs to say Plaintiffs failed to conduct proper discovery and in fact Plaintiffs did no discovery on this issue. *See* Opposition at p. 3, lines 22-24, p. 9, lines 5-7. Had they done so, they say, Plaintiffs would have discovered this defense. It was "always there simply for the asking". Defendant's Opposition, p. 11, line 20.

This is absolutely a false statement to this Court and Defendant should be admonished for its lack of condor with the Court. Plaintiffs DID conduct discovery:   Defendant was specifically and repeatedly asked questions and asked to produce documents about its affirmative defenses and denial of liability in general and its assertion of failure to state a cause of action in particular. Plaintiffs were told by Defendant through its responses that its defenses in general and this defense in particular were basically this:  a. the stairs are safe and b. Plaintiff fell because he was not paying attention. *See* Declaration of David G. Banes, paras 1-13, and 17, Exhibits A and B.

---

[4] *See also  Tancredi v. Dive Makai Charters*, 823 F.Supp. 778, 785-6 (D.Ct. Hawaii 1993) (Defendant's general catch-all affirmative defense "was insufficient to provide such notice or prevent unfair surprise to the opposing party"); *Rademacher v. Colorado Ass'n of Soil Conservation Districts Medical Ben. Plan,* 11 F.3d 1567, 1571 (10th Cir. 1993)( "**A naked assertion that a plaintiff's complaint fails to state a claim will not, by itself, excuse a defendant's failure to timely present and argue available defenses to the district court")** (emphasis added). *Dobbs v. Vornado Inc.* 576 F.Supp. 1072, 1081 (E.D.N.Y. 1983) (unalleged affirmative defense cannot be raised by general denial). *See generally* 5 Wright and Miller *Federal Practice and Procedure*, § 1278 pp. 485-489 ("Thus, for example, an unalleged defense cannot be proven under a general denial").

[5] Plaintiffs have begun to investigate this new affirmative defense and have found, thus far, that its factual and legal validity are seriously questionable, thus making it even more inequitable to allow its presentation at trial.  *See* Declaration of George L. Hasselback, filed herewith.

**1) Defendant Was Specifically Asked About This Affirmative Defense But Failed To State Anything About The Air Worthiness Doctrine**

For example, over a year ago back on February 21, 2006, Defendant WAS specifically asked about its assertion of "Failure to State a Valid Cause of Action Defense". Defendant failed to disclose the existence of this so-called doctrine in any of its responses.  For example, Defendant was asked to:

> PLEASE DESCRIBE IN DETAIL ALL FACTS which YOU contend support your allegation that Plaintiffs have failed to state a valid cause of action.

Plaintiffs Interrogatory No. 18, together with other cited to Discovery Requests and Responses, in relevant part, are attached as  Exhibit A to the Banes Declaration filed herewith, Banes Decla. para. 2

On April 5, 2006, Defendant responded without alluding to or referring to the Air Worthiness doctrine substantively or in-directly.  Instead Defendant  explicitly stated this defense was limited to the supposed eye-witness statements which said in effect that Mr. Fejeran fell because he was not paying attention:

> Please refer  to  the statements of the eye-witnesses which have been disclosed and produced in discovery and the answer to No. 17 above [which similarly referred to eye-witness statements and went on to assert Plaintiff Mr. Fejeran caused the accident]. Since Plaintiff Moses Fejeran has no valid claim or cause of action, Plaintiff Qianyan Fejeran has no valid, derivative claim or case of action.

*Id.,* at para.3.

Hence despite Defendant's assertion to the contrary, Plaintiff DID conduct discovery as to this affirmative defense and **was led to believe that it was only related to Defendant's assertion that Mr. Fejeran caused his own injury**.  Certainly there was nothing in Defendant's Response that would, as Defendant has represented to the Court, that put them on notice about this defense being anything but related to Freedom Air's contention he fell to his own negligence.

**2) Defendant Was Asked To Produce All Documents It Referred To In Responding To The Interrogatory – But Produced No Such Documents**

Similarly, Defendant was asked to produce all documents that it referred to or consulted in responding to the above Interrogatories. Defendant agreed to produce such documents. *See* Defendant's response to Document request Nos. 7 and 8, Banes Decl. paragraphs 9-13, Exhibit B. So if Defendant really did have the "Air Worthiness Doctrine" in mind when it asserted the "Failure to State a Claim defense" why did it not produce such regulations or at least its Air Worthiness Certificate? Why did Defendant not produce one single document related to this Doctrine when they agreed they would produce "ALL" such documents?

**3) Defendant Was Asked Multiple Questions About Its Denial Of Liability And Requested To Produce But Again Did Not Disclose This Defense**

Plaintiffs also conducted additional discovery and Defendant actively misled Plaintiffs into believing its defenses were only  a. The stairs were safe and so Mr. Fejeran was negligent. Defendant never disclosed anything about the Air Worthiness Doctrine. Due to page limitations, Plaintiffs ask the Court to please refer to the accompanying Declaration of Counsel related to the other, related discovery propounded to Defendant and its responses which failed to disclose any facts or documents related to this supposed defense. *See* Banes Decl. paras. 5 – 17, Exhibits A-D.

**4) Plaintiffs Did Not Depose Mr. Brown As He Was Not Listed On Defendant's Mandatory Disclosures And In Response to Discovery, He Was Listed Simply As "Operations Director" With Knowledge Only As To That Mr. Fejeran Fell Due to His Own Negligence.**

Also Defendant asserts Plaintiffs should have taken Mr. Richard Brown's deposition. Defendant fails to tell the Court - - for obvious reasons - - that Defendant never disclosed Mr. Brown, as required by Rule 26, as a person with knowledge of the case  - - he was not disclosed on Defendant's Initial Disclosure nor their Supplemental Disclosure. *See* Banes Decl. paras. 6-8, Exhibits C and D. Importantly, the only persons disclosed by Defendant were eye-witnesses to the accident and later, the flight attendants and pilot  - - all of which again only put Plaintiffs on

notice that they were contesting how and why Mr. Fejeran fell, not that they were going to assert any other defense let alone the Air-Worthiness Doctrine.

As explained further in counsel's declaration, Mr. Brown was disclosed as a witnessin a response to a discovery request[6] but only as to Mr. Fejeran falling due to his own negligence - - not anything to do with "Air Worthiness Doctrine" or to FAA regulations or anything else possibly related to this defense.

**5) Plaintiffs Conducted depositions Based On Defendant's Responses To Discovery And Its Initial Disclosures**

In sum, Plaintiffs did conduct discovery but were led to believe Defendant's affirmative defenses were related only to Mr. Fejeran fell due to his own negligence and that generally the stairs were safe. Plaintiffs conducted discovery on this basis by deposing the witnesses listed on Defendant's Initial Disclosures, all of whom were supposed eye-witnesses and retained an expert who concluded the stairs were NOT safe. Plaintiffs did not depose Mr. Brown as he was never disclosed on Defendant's mandatory disclosure and he was referred to only one time and that was simply and only as "Director of Operations"[7] who may have knowledge related to Mr Fejeran falling due to his own negligence but was not an eye-witness. So even if Plaintiffs had deposed Mr. Brown, they would not know to ask him about any other issue let alone the so-called Air Worthiness Doctrine.

**6) Dr. Gill's report Came AFTER The Fact Discovery Deadline And Plaintiffs' Expert Disclosure Deadlines Has Passed.**

As to the assertion that Dr. Gill's report put Plaintiffs on notice of this affirmative defense, Freedom Air quotes various portions of his report which do not invoke any such doctrine nor cite to any FAA regulation. But more importantly, the report was produced to

---

[6] Significantly, Defendant stated in its discovery response that Mr. Brown was its "Director of Operations". *See* Banes decl., para. 6. However its Opposition and his Declaration, Mr. Brown now self-styles himself as Defendant's "Director of Safety". If he really is, then Plaintiffs should not have been misled by labeling him as Operations Director and only with knowledge as to how Plaintiff fell.

[7] *See* previous footnote 6 – Defendant now says Mr. Brown is its "Director of Safety."

8

counsel AFTER the deadline to conduct discovery and only six days before the time for Plaintiffs to disclose experts.[8] Hence it was not possible to conduct discovery or retain the appropriate expert even if the Gill report did somehow put Plaintiffs on notice (which Plaintiffs dispute).

In short, Plaintiffs' *did* conduct prudent discovery but were simply not told by Defendants about this affirmative defense despite numerous requests and opportunities to do so.

**C. The Addition Of The New Claim Will Require No New Discovery As Knowledge Of How Safe Or Unsafe The Stairway Was At The Time Of The Accident Has Always Been An Issue In This Case.**

Defendant, disingenuously, contends that introducing a claim for liability under the CNMI Consumer Protection Act ("CPA") would require additional discovery as "there is one obviously new crucial legal element," that being "Defendant's knowledge of an unsafe condition and introduction of that unsafe condition into commerce."[9]  Opposition at 7.  There is, in fact, no new legal element, as it is irrefutable that Defendants introduced a service into commerce involving the use of this stairway and a claim for negligence under the common law *always* requires inquiry into knowledge of the unsafe condition.[10]

**1) Defendant Introduced A Service Involving The Stairway Into Commerce.**

Defendant operates an airline for profit.  *See generally* Plaintiffs' Complaint and Defendant's answer.  The airplane from which Mr. Fejeran was disembarking belonged to Defendant and was one of their aircraft that they operated for profit.  *Id.*  The stairway that was

---

[8] The report is dated May 21, 2007 and fact discovery closed three weeks earlier on May 1, 2007 and according to Rule 26(c), Plaintiffs had only until May 27, 2007 to disclose experts.

[9] The only way that this argument could have any merit is if this case were governed under the strict liability standards mandated by the Warsaw Convention.  Plaintiff, however, did not bring this action under the auspices of the Warsaw Convention and does not believe that this has any application here. *See infra*.

[10] Defendant further complains that Plaintiff has not "developed" the knowledge requirement and would have to disclose witnesses and provide proof.  Plaintiff has disclosed two other individuals who have fallen on Freedom Air flights and intends also to argue that the hazard was "open and obvious" through expert testimony.  Knowledge has always been at issue, and just because Defendant may have ignored this element of the case, does not somehow change that fact.

part of that airplane was where Mr. Fejeran alleges that he slipped and fell. *Id.* It would strain credulity to the breaking point to say that Defendant had not introduced a service into commerce that involved the use of that stairway. The only question then, with regard to this specific element of a CPA claim, is whether or not knowledge of the stairways allegedly unsafe condition is a "obviously new" element, that does not exist in the already existing claims for negligence.

### 2) Knowledge Of The Unsafe Condition Has ALWAYS Been An Issue In This Case.

Any claim for negligence has a requirement for some knowledge on the part of the defendant of the risk at which they placed the alleged victim.[11] The notion that the Defendant will be "surprised at Trial" because of an element that it knew or should have known of the stairway's unsafe condition is patently absurd.

#### a) "Common-carrier" Liability Requires Knowledge Of The Unsafe Condition.

Assuming, *arrguendo,* that a "common-carrier" standard of care applies to this case, Defendant's knowledge of the unsafe nature of the stairway is an element of Plaintiffs' existing negligence claim and has, therefore, always been at issue. The common law of the CNMI as contained in the RESTATEMENT (SECOND) OF TORTS states that "the defendant is not liable where he ***neither knows nor should know*** of the unreasonable risk" (emphasis added). Comment e § 314A. Therefore, if Defendant is treated like a "common carrier", "Defendant's knowledge of an unsafe condition" was always at issue and is not an "obvioulsly new crucial legal element" to a claim under the CNMI's Consumer Protection Act.

#### b) Standard Negligence Claims Require Inquiry Into The Knowledge Of The Unsafe Condition.

Even if Defendant is not held to the standard of care for a "common carrier," knowledge of the unsafe condition of the stairway was still always at issue in this case. The plain-vanilla

---

[11] Despite Defendant's assertion that this amendment would "radically shift the nature of the case," (citing *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074 (9th Cir. 1990)) the addition of the CPA claim asks if the stairway was dangerous, if it were placed into commerce as part of a service and if Mr. Fejeran was hurt by it. This is nothing different than the negligence claim (other than undisputable facts already established). Such an amendment, is a far cry from *Morongo* where the plaintiffs sought to shift from enforcement of a tribal bingo gambling law to a RICO act. ***That*** was a "radical" shift in the case. This is simply another cause of action using the same facts.

standard for negligent conduct under the RESTATEMENT (SECOND) OF TORTS also contemplates the amount of knowledge that the purported tortfeasor possesses regarding the relative risk of their actions. *See generally* § 289. Specifically, "[i]n order that an act may be negligent it is necessary that the actor should realize that it involves a risk of causing harm to some interest of another." Comment b to § 289. Put another way, the actor sought to be held negligent has to have "knowledge of an unsafe condition" before that actor will be held liable for it. Opposition at 7. Therefore, if Defendant is held to the generic negligence standard its "knowledge of an unsafe condition" *still* is not an "obviously new crucial element" to a claim for liability under the CNMI Consumer Protection Act.[12]

In short, the Defendant's knowledge of the unsafe condition of the stairway has ***always been at issue*** in this case and to contend otherwise is, at best, being purposefully obtuse and at worst intentionally deceptive.[13] There are no new issues presented by Plaintiffs' proposed Amended Complaint and, therefore, no new discovery is necessary, ergo, Defendants will suffer no prejudice from not being able to conduct further discovery.[14]

### D. The Proposed Amendment Is Not Futile As The Warsaw Convention Does NOT Apply.

Defendant goes to great lengths to convince this Court that amendment of Plaintiffs' Complaint to include a cause of action under the CPA would be "futile" as the "Warsaw Convention provides the exclusive remedy" for Plaintiffs' claims. Opposition at 9. Defendant treats the applicability of the Warsaw Convention as a foregone conclusion.[15] However, ***the***

---

[12] Especially telling is that after bemoaning that onerous amounts of new discovery will be necessary, Defendant turns around and says that Plaintiff is manufacturing a new cause of action out of "old facts." Opposition at 8-9. Is this being created out of "old facts" or is this something that requires "exchanging discovery…developing defenses…[and/or] additional expert opinions." Opposition at 8. Defendant cannot have it both ways. No new factual issues are presented in the new pleading and therefore no new discovery is necessary.

[13] Defendant cites to *Zivkovic v. Southern Cal. Edison Co.,* to assert that since so much new discovery is necessary, this Court could deny the motion without risk of error. This argument is unpersuasive because unlike *Zivkovic **this new cause of action needs no new facts and therefore no new discovery.*** There is no delay due to new discovery and there is no prejudice without it as there are no new factual issues to try.

[14] Even if additional fact discovery were necessary, Plaintiffs would agree to an extension of the trial date to accomplish such and this would eliminate all risk of prejudice to Defendant.

[15] Defendant provides authority supporting the proposition that the Warsaw Convention is an exclusive remedy. However, the applicability of the Warsaw Convention was *not the issue* in these cases, but rather whether or not it

11

*Warsaw Convention is entirely inapplicable.*[16] The Warsaw Convention cannot, by its own terms, apply to Mr. Fejeran's flight to Rota. Furthermore, Defendant offers no authority to support why the conclusory statements of one of Defendant's employees should overturn the Language of the Convention itself and well-established Ninth Circuit precedent.

**1) The Warsaw Convention Applies To Limited Circumstances, None Of Which Are Present.**

**a) The Warsaw Convention Only Applies to Contracts For International Transportation.**

The Warsaw Convention only applies to "international carriage of persons, baggage, or goods performed by an aircraft for hire". Article 1(1). Article 1(2) of the Warsaw Convention explains that "international carriage" is travel where:

> according to the contract made by the parties, the place of departure and the place of destination … are situated either within the territories of two High Contracting parties [to the Convention], or within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this convention.

Put another way:

> the Convention will apply in two situations. First, it applies, if according to the contract of transportation (e.g., a plane ticket), travel will be from one High Contracting Party to another. Second, if the contract of transportation provides for travel from a High Contracting Party, for stops abroad, and then for a return to that same High Contracting Party, then the Convention also applies.

*Lee v. China Airlines, Ltd.,* 669 F.Supp 979, 980 (C.D. Cal. 1987). It is "the intention of the parties as expressed in the contract of transportation, *i.e.,* the ticket or other instrument, [that]

---

was the *exclusive* remedy *if it in fact applied.*. *See El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng,* 525 U.S. 155 (1999), *Carey v. United Airlines,* 255 F3d 1044 (9th Cir. 2001), *Dazo v. Gobe Airport Security Sevices,* 295 F.3d 934 (9th Cir. 2002), *Husmann v. Trans World Airlines, Inc.,* 169 F.3d 1151 (8th Cir. 1999), *Mbaba v. Societe Air France,* 457 F.3d 496 (5th Cir. 2006) and *Bernardi v. Apple Vacations,* 236 F. Supp. 2d 465 (E.D. Pa. 2002). None of these cases in any way supports the proposition that a flight from U.S. Commonwealth to a U.S. Territory, with no stops, is governed by the Warsaw Convention.

[16] Defendant also seems to insinuate that its position is somehow stronger because this basis for jurisdiction is "unchallenged". Opposition at 9. While it is true that Plaintiffs have never challenged this particular basis for jurisdiction in this Court by no means indicates an agreement with the applicability of the Warsaw Convention. Plaintiffs have never agreed that this treaty applies, but did not move to remand this case back to Superior Court because they agreed that the alternative basis for jurisdiction offered by Defendants—diversity--exists. The Warsaw Convention does not, and never did, apply here and Plaintiffs have never indicated otherwise.

determines the final destination" for purposes of determining if the Warsaw Convention applies. *Sopcak v. Northern Mountain Helicopter Service,* 52 F.3d 817, 819 (9th Cir. 1995). Since the contract of travel was not between two High Contracting Parties and there were no stops along the way from Saipan to Rota, the Warsaw Convention does not apply - - it is legally irrelevant if the flight passed over international waters (a fact Plaintiffs do not concede).

### b) The Ticket Contemplated NO Transportation Between Two High Contracting Parties And There Were NO Stops Anywhere Along The Way.

Mr. Fejeran's ticket contemplated a trip from Saipan to Rota and back again. *See* photocopy of Mr. Fejeran's ticket attached hereto as "Exhibit F." One can clearly see in the "Origin/Destination" section the annotation "S-R-S", indicating at the time he secured the ticket, the Defendant's agent (who filled out the ticket) understood him to be traveling from Saipan ("S") to Rota ("R") and back to Saipan ("S").[17] *Id.* Since this is travel from one point in the United States to another point within the United States, "the place of departure and the place of destination" ***are not*** "situated … within the territories of two High Contracting parties."[18] Warsaw Convention Article 1(2). Furthermore, since the flight from Saipan to Rota did not stop anywhere on the way, it is patently impossible that there was "an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this convention." *Id*

### c) The Ticket Also Gave No Notice That The Warsaw Convention Appliesy.

It is even more apparent that the Parties did not contemplate "international carriage" because the ticket issued to Mr. Fejeran did not contain the notice that the Warsaw Convention

---

[17] "**What matters is the final destination of the passengers and not the plane**." *Coyle v. P.T. Garuda Indonesia*, 363 F.3d 979, 991 (9th Cir. 2004) (emphasis added)(holding that just because two persons on vacation in Indonesia were eventually going to return home to the U.S. did not matter when a distinct and separate ticket was purchased for domestic travel in Indonesia). The final destination of that aircraft could have been Guam, Japan, China, the UK, Egypt, or any other destination on the face of the planet, and the outcome of this analysis would be the same. Since Mr. Fejeran's contract with Defendant contemplated travel within one High Contracting Party and no stops anywhere else, the Warsaw Convention *just does not apply*.

[18] In any event, even if Mr. Fejeran had purchased his ticket to travel all the way through to Guam and then return to Saipan, this still would not have been "a contract for international travel" because Guam is a US territory and part of the same "High Contracting Party." Defendant has cited to no legal authorities to the contrary despite having the burden of proof.

mandates. Article 3(2) of the Warsaw Convention mandates that certain language be printed on airline tickets purchased for "international carriage". There is no such language present on Mr. Fejeran's ticket. *See* Exhibit F. Hence, apparently even Defendant did not contemplate that the trip from Saipan to Rota was "international" at the time it issued the ticket to Mr. Fejeran. It is *that* and not whatever expedient position benefits their trial strategy that determines whether or not the Warsaw Convention applies. That Defendant *did not* place the mandatory notice required by the Warsaw Convention on the ticket issued to Mr. Fejeran speaks volumes as to how much it must have thought this was "international transportation".

Put simply, the flight upon which Mr. Fejeran was injured fits neither of the two exclusive scenarios that would satisfy the Warsaw Convention's definition of "international carriage" and nothing on the ticket would indicate otherwise. Therefore, the Warsaw Convention can not apply to this case.

**2) Defendant Has Not Provided ANY Authority As To Why This Court Should Depart From The Established Interpretation Of The Warsaw Convention.**

Defendant does not cite to any case law, nor to the language of the Convention, nor to any law review article, nor to any FAA regulation nor to any FAA proclamation nor to any declaration from a Warsaw Convention author (or expert) or even an FAA official to support its contention. The only support it offers is the conclusory and self-serving declaration testimony of one of its employees Richard Brown ("Mr. Brown") to convince this Court that the flight upon which Mr. Fejeran was hurt involved a "contract for international travel" under the Warsaw Convention. Opposition at 9. His bare, probably hearsay, conclusory and bald statements are the sum total of what Defendant offers to support this proposition. While Mr. Brown tells us in summary fashion that he is an authority on "how the Warsaw Convention applies to international air travel" he does not, in fact, provide any authority to support his conclusions, persuasive or otherwise, nor does he provide any foundation for how he is qualified to render expert testimony on the applicability of the Warsaw Convention nor how he specifically became an authority or how he learned of such an interpretation. *See generally* Brown Decl.

In truth, all he does is recount, anecdotally, that the Federal Aviation Administration and the Department of Transportation have characterized the flight from Saipan to Rota as "international" in completely unrelated circumstances. Brown Decl., ¶¶ 6-9. Strikingly, Mr. Brown asserts these legal conclusions without reference to a single interpretive case or FAA regulation. Such hearsay, conclusory statements should not be admissible and certainly are not persuasive. But more to the point, his opinion as to DOT and FAA regulations have ***nothing to do with how the Warsaw Convention, as interpreted by Federal Courts, views the contract between Mr. Fejeran and the Defendant.***[19] Mr. Brown conflates two very divergent legal analyses. Perhaps the flight in question is "international" for the purposes of FAA and DOT regulation and safety standards (Plaintiffs do not concede it does). But even if true, ***this does not automatically make it "international carriage" under the Warsaw Convention.*** With all due respect to Mr. Brown, he does not determine how international treaties will be interpreted by United States Federal Courts. In any case, since his opinion, such that it is, is contradicted by the language of the Warsaw Convention itself and Ninth Circuit precedent, *Coyle v. P.T. Garuda,* 363 F.3d at 991, *Sopack* 52 F.3d at 819 and *Lee v. China Airlines,* 669 F.Supp. at 980, it is irrelevant. Certainly it is not enough to meet Defendant's burden of proving the applicability of the Warsaw Convention let alone to convince this Court to ignore binding Ninth Circuit authority.

### III. Conclusion.

Since it arises out of the same operative facts and does not in reality prejudice Defendant[20], Plaintiff's Motion to Amend should be granted. Additionally, Defendant must be precluded from asserting at trial any facts or legal theories not specifically asserted in their Answer - - especially their reliance on this so-called Air Worthiness Doctrine. As Plaintiffs will be prejudiced as Defendant has failed to provide the necessary "fair notice" in order to conduct appropriate discovery, retain experts and prepare for a trial less than two months away.

---

[19] Defendant provides ***no*** authority to stand for the novel proposition that Mr. Brown's opinion should overrule well-established jurisprudence interpreting the applicability of the Warsaw Convention.

[20] On information and belief, Defendant is likely to ask for a continuance anyway related to expert discovery issues.

O'CONNOR BERMAN DOTTS & BANES
Attorney for Plaintiffs Moses T. and
Qianyan S. Fejeran


By: _____/s/_____
             DAVID G. BANES, ESQ.