1  **DAVID G. BANES, Esq. (FO171)**
2  **O'Connor Berman Dotts & Banes**
   **Second Floor, Nauru Building**
3  **P.O. Box 501969**
   **Saipan, MP96950**
4  **Telephone No. (670) 234-5684**
   **Facsimile No. (670) 234-5683**
5
6  **Attorneys for Plaintiffs Moses T. and Qianyan S. Fejeran**

7  
   **IN THE UNITED STATES DISTRICT COURT**
8  **FOR THE**
   **NORTHERN MARIANA ISLANDS**
9

| | |
|---|---|
| **MOSES T. FEJERAN and QIANYAN S. FEJERAN,** | **CIVIL ACTION NO. 05-0033** |
| Plaintiffs, | **DECLARATION OF DAVID G. BANES** |
| vs. | Date : August 9, 2007 |
| **AVIATION SERVICES (CNMI), LTD. d.b.a. FREEDOM AIR,** | Time : 9:00 a.m. |
| | Judge: Alex R. Munson |
| Defendant. | |

I, David G. Banes, as counsel for Plaintiffs in the above-entitled matter, do hereby affirm and certify as follows:

**Plaintiffs Were Actively Misled by Defendant's Discovery Responses**

1. Plaintiffs were actively led to believe by Defendant's responses to written discovery that Defendant's Affirmative Defense of Failure to State a Cause of Action was related to Defendant's contention Mr. Fejeran fell due to his own negligence. Nothing else.

2. Over a year ago back on February 21, 2006, Defendant was specifically asked about its assertion of "Failure to State a Valid Cause of Action Defense" defendant failed to disclose the existence of this so-called "Air Worthiness Doctrine" in any of its responses. For example,

1

in response to its affirmative defense of failure to state a cause of action, Defendant was asked to:

> PLEASE DESCRIBE IN DETAIL ALL FACTS which YOU contend support your allegation that Plaintiffs have failed to state a valid cause of action.

Plaintiffs Interrogatory No. 18, together with other cited to Discovery Requests and Responses, in relevant part, are attached as Exhibit A filed herewith, p. 7.

3. On April 5, 2006, Defendant responded without alluding to or referring to the Air Worthiness doctrine substantively or in-directly. Instead Defendant explicitly stated this defense was limited to the supposed eye-witness statements which said in effect that Plaintiff fell because he was not paying attention:

> Please refer to the statements of the eye-witnesses which have been disclosed and produced in discovery and the answer to No. 17 above [which similarly referred to eye-witness statements and went on to assert Plaintiff Mr. Fejeran caused the accident]. Since Plaintiff Moses Fejeran has no valid claim or cause of action, Plaintiff Qianyan Fejeran has no valid, derivative claim or case of action.

Defendant's Response to Interrogatory No. 18, attached as Exhibit A, p. 7.

4. Hence despite Defendant's assertion to the contrary,[1] Plaintiffs did conduct discovery as to this affirmative defense and **were led to believe by Defendant's written responses that it was only related to Defendant's assertion that Mr. Fejeran caused his own injury**. Certainly there was nothing in Defendant's Response that would, as Defendant has represented to the Court, put them on notice about this defense being anything but related to Freedom Air's contention he fell to his own negligence.

---

[1] Defendant represents to the Court that Plaintiffs conducted no discovery as to this issue. *See e.g*. Opposition, p. 9: "Had [Plaintiffs] served discovery requests regarding defendant's defense … they would have become aware of the aircraft's air worthiness much sooner."

**Defendant also Told Plaintiffs that Their Denial of Liability Was Limited to a. The Stairs Were Safe and b. Mr. Fejeran Was Negligent.**

5. Defendant was also asked a more general questions related to its denial of liability(breach of duty), it was asked to state "all facts", to identify "all persons with knowledge" and to produce "all relevant" documents. Again Defendant did not state anything about the Air Worthiness Doctrine or any facts or regulations that would lead Plaintiffs to understand that such a defense was being asserted. Instead Defendant led Plaintiffs to believe they were just contending the stairs were safe:

> Interrogatory No. 6: Please DESCRIBE IN DETAIL ALL FACTS you contend are relevant to your general and specific denial that Defendant breached its duty to maintain the methods and/or instrumentalities used by your passengers to embark upon and disembark from your aircraft in a reasonably safe manner as stated in your Answer.
>
> Response to Interrogatory No. 6  There was nothing wrong with the aircraft stair and the proper warnings and cautions were given to the passengers concerning use of the stairs. Said another way, the no-breach-of-duty defense is established by the *absence* [emphasis in original] of any fact which would show or event tend to show any unlawful act or omission on the part of Defendant . . . On the other hand, there are facts which show or tend to show that the passenger was not paying attention to the situation and not looking out for his own safety. Additional facts may become apparent through discovery.

*See* Exhibit A, p. 4.

**Defendant Also Did Not Disclose that Mr. Brown had Information About the So-called Air Worthiness Doctrine**

6. Defendant was also asked to identify "all persons" related to this no-breach-of-duty defense. Defendant referred to its Initial Disclosures, i.e. eye-witnesses who will contend Mr. Fejeran caused the accident. Defendant did go on to disclose Richard Brown but simply as "Director of Operations" with no explanation that he had knowledge outside of Defendant's Response to Interrogatory No. 6., i.e., the stairs were safe and Plaintiff fell due to his own

negligence. Defendant did also identify a "safety expert[2] yet to be retained and identified." But again Defendant in Plaintiff's response to the previous and related Interrogatory simply stated the stairs were safe. *See* Defendant's Responses to Interrogatory Nos. 6 and 7, Exhibit A, p. 4.

7. So Plaintiffs reasonably believed that all Mr. Brown[3] and the "safety expert" would testify to is about the stairs being safe, not that either would assert some un-named affirmative defense.

**Mr. Brown Was Never Disclosed on Defendant's Mandatory Pretrial Disclosures.**

8. Importantly, Mr. Brown has NEVER BEEN DISCLOSED on Defendant's Initial or Supplemental Disclosures. *See* Exhibits C and D hereto. Hence the only information Defendant has ever disclosed to Plaintiffs is that he has some knowledge that the stairs were safe and he is the "Operations Manager".

**Despite An Obligation to Do So, Defendant Did Not Produce any Documents Related to The Air Worthiness Defense.**

9. Relatedly, Plaintiffs asked Defendant to identify all documents related to its "general and specific denials" that Defendant breached its duty. *See* Interrogatory No. 8, Exhibit A, p. 4. Defendant DID identify a governmental and legal document, "FAR 121.131 et seq." but this document only relates to manuals related to operating requirements, NOT the Air Worthiness Doctrine. *See* Exhibit E. Defendant then again identifies documents already "disclosed and/or produced . . . such as witness statements and incident reports". *See* Defendant's Response to Interrogatory No. 8. So this response again led Plaintiffs to believe Defendants' defenses were only related to an eye witness who contended Mr. Fejeran was not paying attention when he fell.

---

[2] Significantly, Defendant stated a "safety expert" NOT a FAA expert. In fact. Dr. Gill could not point to FAA regulation backing up his testimony but relied on the statements of Mr. Brown who is NEVER disclosed on Defendant's mandatory Disclosures.

[3] Significantly, Defendant represents to the Court Mr. Brown is Defendant's "Director of Safety", not as listed in its Discovery Responses as "Director of Operations". See Opposition at p. 3 line 7.

10. Defendants were also specifically asked to produce "all documents" that it "contend[ed] are relevant" to any of its "affirmative defenses" and more specifically as to its claim that "Plaintiffs' Complaint fails to state a valid cause of action". *See* Document Request Nos. 15 and 16, Exhibit B, p. 5. While Defendant did assert the attorney work product and attorney-client privilege, Defendant did agree to produce "all" such documents and any withheld would be shown on a "privilege log". *See* Defendant's Response to Documents Requests Nos. 15 and 16. Defendant DID NOT produce any documents - - NOT EVEN ITS AIR WORTHINESS CERTIFICATE - - related to the Air Worthiness Doctrine or even any privilege log showing they had withheld any documents.

11. Importantly Defendant DID assert in response to discovery a FAR regulation but it was limited to "requirements for preparing and maintaining manuals by all certificate holders". *See* FAR 121.131 entitled "Applicability". *See* Defendant's Response to Interrogatory No. 1. NOTHING in that Section states that aircraft operators are insulated from liability or that operators cannot, as Defendant contends, change any part on an airplane.

12. Similarly, Defendant was asked to produce all documents that it referred to or consulted in responding to the above Interrogatories. i.e., questions related to its affirmative defense of Failure to State a Cause of Action and denial of liability inter alia. Defendant agreed to produce such documents. *See* Defendant's Response to Document request Nos. 7 and 8, Exhibit B, pp. 7-8. But again Defendant did not produce any documents related to the Air Worthiness Doctrine.

13. So if Defendant really did have the "Air Worthiness Doctrine" in mind when it asserted the "Failure to State a Claim defense" why did it not produce such regulations or at least its Air Worthiness Certificate? Why did Defendant not produce one single document related to this Doctrine when they agreed they would produce "ALL" such documents?

**Defendant's Initial and Supplemental Disclosures Did Not Put Plaintiffs on Notice.**

14.  Defendants in their Initial Disclosures listed on three person "likely to have discoverable information": Mrs. Boddy and Messrs. Muna and Suzuki, all three whom were alleged eyewitnesses (only Mrs. Boddy in fact was). Defendant did not identify Mr. Brown nor did Defendant disclose any FAA regulations or the Warsaw Convention document or its Air Worthiness Certificate. *See* Exhibit C.

15. Defendant later filed a Supplemental Disclosure but only disclosed the pilot, the first officer and the flight attendant. Again, Mr. Brown was not disclosed. Defendant did include some supplemental documents related to pre-flight inspectors but again no documents (or witness) related to the so-called Air Worthiness Doctrine.

16. Perhaps Defendant will argue Plaintiffs should have been on notice since Defendant did invoke the Warsaw Convention, not as an affirmative defense mind you but in its Answer as a basis for jurisdiction. But Plaintiffs asked discovery as to this issue as well and were told simply it was based on "the flight in question operated between the CNMI and Guam, thus subjecting it to the rules and treatises governing international flights. *See*   Defendant's Responses to Interrogatories Nos. 12 and 13, Exhibit A, pp. 5-6.

17. In sum, Plaintiffs were led to believe and reasonably did believe that Defendant's legal defense was premised on: a. the stairs were reasonably safe and/or b. Plaintiff Moses Fejeran fell due to his own negligence. Plaintiffs conducted discovery on this basis by deposing the witnesses listed on Defendant's Initial Disclosures, all of whom were supposed eye-witnesses and retained an expert who concluded the stairs were NOT safe.

**Plaintiffs Already Asked Defendant About Previous Accidents.**

18.   Also, Plaintiffs asked Defendant " to IDENTIFY any and all Person(s) to your knowledge who have in the last ten (10) years, slipped, fallen, or otherwise had any accident …" Interrogatory No. 4, Exhibit A, p. 2.  Defendant replied that no one during the last five years have "been involved in embarkation and disembarkation incidents".  *Id* at p. 3.

19.   Plaintiffs asked a related Interrogatory related to any "actions taken by your employees in response to any [such] incident…"  Defendants responded again that there no such incidents.  *Id.*

20.   Plaintiffs also asked Defendant to produce any related documents.  *See* Document request Nos. 2, 4, and 14.  Defendant agreed to do so.  *Id.*

**Defendant Has a "Duty" To Supplement Its Previous Responses**

21.   During the deposition of one of Defendant's employees, Mrs. Boddy however testified that there was such an incident during the last five years she just could not respond with any details.

22.   Defendant has a mandatory duty to update its discovery responses to Interrogatory Nos. 4 and 5 and its related Document Request Nos. 2, 4 and 14.  *See* Rule 26 (e)(2) which states in relevant part:

> (2). A party is under a duty seasonably to amend a prior response to an interrogatory, request for production . . . if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties.

7
3189-01-070801-Declaration of DGB-epv

1
2      Dated this 2nd of August, 2007.
3
4
5                                                      By: /s/ _____
                                                              David G. Banes
6
7   3189-01-070801-Declaration of DGB-epv
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28