**DAVID G. BANES, Esq.**
**O'Connor Berman Dotts & Banes**
**Second Floor, Nauru Building**
**P.O. Box 501969**
**Saipan, MP 96950**
**Telephone No. (670) 234-5684**
**Facsimile No. (670) 234-5683**

**Attorneys for Plaintiffs Moses T. and Qianyan S. Fejeran**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| MOSES T. FEJERAN and QIANYAN S. FEJERAN, <br><br> Plaintiffs, <br><br> vs. <br><br> AVIATION SERVICES (CNMI), LTD. d.b.a. FREEDOM AIR, <br><br> Defendant. | CIVIL ACTION NO. 05-0033 <br><br> **MOTION IN LIMINE TO EXCLUDE TESTIMONY OR EVIDENCE OF ANY AFFIRMATIVE DEFENSE NOT EXPLICITLY STATED IN THEIR ANSWER** <br><br> Judge: Munson <br> Date: August 21, 2007 <br> Time: 9:30 a.m. |

## INTRODUCTION

As the time to amend pleadings pursuant to the Court's Case Management Conference Order has long passed (April 3, 2006) , Defendant should not be allowed to assert at trial any testimony, documents or other evidence related to any affirmative defense that it has not explicitly plead in its Answer to Plaintiffs' Complaint. More specifically, Defendant should not be permitted to an end-run around the Case Management Order and - - without moving to amend its Answer - - nonetheless assert at trial two affirmative defenses that it has lately revealed. These two "new" defenses are the "airworthiness doctrine" and the exclusivity of the Warsaw Convention.  More generally, Defendant should not be able to assert any other affirmative defense that it has not disclosed, but that the Plaintiffs may not, as yet, be aware of.

**- - Defendant Should Not Be Allowed to Present Evidence As to the Air Worthiness Doctrine**

Defendant should not be allowed to have either its expert Mr. Gill or its employee Mr. Brown, or any other person, present testimony that Freedom Airlines is insulated from liability because it cannot make modifications to an FAA approved aircraft. This affirmative defense is not, as required by Fed.R.Civ.Pro. Rule 8, stated in Defendant's Answer. Nor is it disclosed in Defendant's Initial or Supplemental Disclosures or Responses to Discovery which indicates either Defendant just learned of this affirmative defense[1] or Defendant committed discovery abuse by refusing to disclose this defense or its related witnesses. Either way, Plaintiffs were not given "fair notice" and will be greatly prejudiced by allowing Defendant to ambush them at trial with this un-named defense as Plaintiffs were precluded from conducting discovery, retaining experts or preparing trial strategy to counter this defense.

**- - Defendant Should Not Be Allowed to Present Evidence As to the Warsaw Convention**

Similarly Defendant should also not be permitted to plead any defense or limitations under the Warsaw Convention because they did not assert this as an affirmative defense either. Also, this treaty, by its own terms, has no application in a situation like the one at bar. The flight upon which Mr. Fejeran fell is not "international" travel as contemplated by the Warsaw Convention. Therefore, this treaty can have no application to this case.

**- - Defendant Should Not Be Allowed to Present Evidence As to Any Other Unasserted Defense**

As this matter has been pending for two years and the deadline to amend pleadings according to the Court's Case Management Order passed almost two years ago (Nov. 30, 2005), Defendant should not be allowed to ignore this deadline and the requirements of Rule 8, Fed.R.Civ.Pro. and ambush Plaintiffs at trial with evidence of some other un-named affirmative

---

[1] *Cf* Defendant's Opposition to Motion to Amend, pp. 3,9 and 11 in which Defendant asserts that in essence this affirmative defense was always there for the asking, apparently forgetting Plaintiffs DID ask.

defense. For these reasons, this Court should grant Plaintiffs' Motion and order that Defendants present no evidence or testimony regarding any affirmative defense that it has not already specifically plead it its Answer. Alternatively, Plaintiff should be allowed to amend their Complaint as set forth in their Motion to Amend recently denied by this Court.

**ARGUMENT**

**I. DEFENDANT SHOULD NOT BE ALLOWED TO PRESENT EVIDENCE RELATED TO ANY UNASSERTED DEFENSE**

Defendant had a duty pursuant to Rule 8, Fed.R.Civ.Pro. to assert in its Answer all of its affirmative defenses so as to prevent surprise or ambush to Plaintiffs at trial. Hence Defendant should not be allowed to present any testimony or evidence as to any defense that is not specifically pled as an affirmative defense.

**A. Defendant Had The Obligation To Assert In Its Answer All Of Its Affirmative Defenses With Sufficient Particularity To Give Plaintiffs "Fair Notice" Of Its Meaning. Otherwise, Such defense Is Waived**

Rule 8(c) requires that a responsive pleading must set forth certain enumerated affirmative defenses and "any other matter constituting an avoidance or affirmative defense." Rule 8(c), Fed.R.Civ.Pro. If a Defendant fails to do so, such defense is waived, *see generally* WRIGHT AND MILLER *Federal Practice and Procedure* § 1278[2] especially, as here, when to do so would prejudice Plaintiffs. *See e.g. Magana v. CNMI*, 107 F.3d 1436, 1446 (9th Cir. 1997). Since an affirmative defense:

> will defeat plaintiff's claim if it is accepted by the court, Rule 8(c), by requiring defendant to plead his defense or risk waiving it, also serves the purpose of giving the opposing party notice of the defense and an opportunity to argue why his claim should not be barred completely.

---

[2] "It is a frequently proposition of virtually universal acceptance by the Federal Courts that a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of this defense and its exclusion from the case."

WRIGHT AND MILLER, *Federal Practice and Procedure*, § 1270, p. 414 (citing to *Blonder-Tongue Labs v. University of Illinois Foundation*, 91 S.Ct. 1434, 402 U.S. 313, 28 L.Ed.2d 788 (1971)).

Generally, a defendant is required to plead any defense which would otherwise surprise plaintiffs at trial. *Id.* at § 1271, p. 446. Or as stated by a district court:

> Had the defense * * * been put forward when it could and should have been, it would have been open to plaintiff to pursue at that time such discovery procedures as he considered appropriate, in order to develop the true state of facts. Discovery, including the remedy of depositions of persons concerned, * * * could have gone far to develop whether this defense had been appropriately raised.

*Garrison v. Baltimore & Ohio R. Co.,* 20 F.R.D. 190, 195 (D.Pa. 1957).

After almost two years of litigation, Plaintiffs learned for the first time on June 29, 2007, during the deposition of their "safety" expert Mr. Gill that Defendant will assert the so-called "Air Worthiness Doctrine" as an affirmative defense. Plaintiffs also learned only on July 26, 2007, that Defendant would seek to apply the $75,000 cap on damages of the Warsaw Convention.[3]

**1. The Time to Amend Pleadings Has Long Since Passed**

Defendant did not assert either the Air Worthiness Doctrine or the Warsaw Convention as affirmative defenses. Defendant has not moved to amend their Answer to include either defense. Had Defendant moved the Court to amend its Answer, it surely would been denied as the timetable for amending pleadings is governed by Federal Rule of Civil Procedure 16 ("Rule 16") and the Case Management Scheduling Order, No. 9 (Nov. 30, 2005), provides that "[a]ll motions to amend pleadings shall be filed on or before April 3, 2006." *See* This Court's Order

---

[3] Defendant did assert this Convention as a basis for jurisdiction in its Request to Remove. Defendant explicitly also mentioned this Convention at a settlement conference on or about June 30, 2007. But Defendant just officially asserted this limitation in its Opposition to Motion to Amend filed with the Court on July 26, 2007, pp. 9-10.

4

denying Plaintiffs' Motion to Amend et al. dated August 9, 2007 slip op. at p. 2 (the "Order") (citing to *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1294-95 (9th Cir.2000) (explaining that once a pretrial scheduling order has been filed Rule 16 applies to motion to amend pleadings)). Although the case management scheduling order has been amended twice since the original order upon the stipulation of the parties, the deadline to file a motion to amend the pleadings was never altered. *Id.*

### 2. Defendant Should Not Be Permitted to Do An End-Run Around the Court's Case Management Order

So, apparently Defendant hopes to do get around the Court's Order by ambushing Plaintiffs with testimony and evidence related to these affirmative defenses without amending their Answer. Hence rather than risk losing a Motion to Amend, Defendant is hoping to sneak through the back door these affirmative defenses. However to allow Defendant to present defenses it has known about and prepared for almost two years but which it just recently disclosed to Plaintiffs would ambush and unfairly prejudice Plaintiffs as they were denied an "opportunity to develop a strategy and conduct discovery to oppose" this defense "because "discovery has already closed" so Plaintiffs cannot "conduct additional discovery." *Toth v. Glazer,* 163 F.R.D. 549, 549-550 (E.D.Wisc. 1995) (Defendant denied Leave to Amend its Answer to include affirmative defense). *See also Blonder-Tongue* 91 S.Ct. at 1434 and *Garrison* 20 F.R.D. at 195.

### B. An Affirmative Defense Must Be Specifically Plead And A General Statement Like "Failed To State A Cause Of Action" Will Not Suffice.

Defendant Freedom Air did not specifically assert the so-called "Air Worthiness Doctrine" as an affirmative defense.[4]  Furthermore, while Defendant did assert the Warsaw

---

[4] The Court has already in effect ruled that no such affirmative defense was asserted. *See* Order Denying Motion to Amend, slip op. at p.2, lines 6-10.

5

3189-01-070808-PL-MotLimAffDef-glh

Convention as a basis for jurisdiction, it never plead that this treaty insulated them from liability in any way, or modified Plaintiffs common-law rights to recover from injury (in other words, that the Warsaw Convention was an affirmative defense).[5] Therefore, this Court should prevent any testimony or other evidence regarding them from being presented at trial. Furthermore, this Court should order that Defendant cannot present any evidence related to any other undisclosed affirmative defenses at trial.

### 1. An Affirmative Defense Must Meet the Requirement of Rule 8

Affirmative defenses must comply with Rule 8, Fed.R.Civ.Pro.: "Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure. Thus, defenses must set forth a 'short and plain statement,' Fed.R .Civ.P. 8(a), of the defense." *Heller Financial, Inc. v. Midwhey Power Co., Inc*., 883 F.2d 1286, 1294 (7th Cir.1989). *See also Woodfield v. Nationwide Mutual Ins. Co*., 193 F.3d 354, 362 (5th Cir.1999) ("An affirmative defense is subject to the same pleading requirements as is the complaint.").

### 2. It Must Set Forth All the Material Elements of the Defense

An affirmative defense "must include either direct or inferential allegations respecting all material elements of the defense asserted" and simply naming a legal theory without indicating how it is connected to the case at hand is not sufficient. Therefore an affirmative defense of failure to state a claim, "required a short plain statement of the basis for the defense as is set forth in Rule 8(a)." *Yash Raj Films (USA) v. Atlantic Video* 2004 WL 1200184 (N.D. I11. May 28, 2004). The Ninth Circuit has held that "[t]he key to determining the sufficiency of pleading an affirmative defense **is whether it gives plaintiff fair notice of the defense**." *Wyshak v. City National Bank*, 607 F.2d 824, 827 (9th Cir.1979) (emphasis added).[6]

---

[5] *See* Defendant's Answer where the Warsaw Convention is only mentioned as a basis for federal question jurisdiction and is not listed as an affirmative defense or limitation on liability.
[6] *See also SecuriMetrics, Inc. v. Hartford Cas. Ins. Co.*, 2005 WL 2463749 *2 (N.D.Cal. September 26 2005) (A defense is insufficient if it fails to give the plaintiff fair notice of the nature of the defense); *Sun Microsystems, Inc. v. Datram Corp*., 1997 WL 50272 *3 (N.D.Cal., February 4, 1997) (affirmative defense must be pled with the necessary specificity to give the plaintiff "fair notice" of the defense); *Yash Raj Films (USA) v. Atlantic Video* 2004

**3. Defendant Has Failed to Give Plaintiffs Fair Notice**

Here, neither defense is stated explicitly or even implicitly giving Plaintiffs "fair notice" of either defense. Instead, the Warsaw Convention is stated as a basis for jurisdiction. As to the "Air Worthiness" doctrine, Defendant claims it is hidden within their affirmative defense of failure to state a cause of action. There are no direct or even inferential allegations as to what Defendant meant by its assertion the Complaint fails to state a claim. Hence, it does not give Plaintiffs "fair notice" as required by Ninth Circuit precedent and Defendant should not be allowed to assert either these specific affirmative defenses (or any other undisclosed affirmative defenses) at trial as the deadline for discovery and to retain and designate experts has passed.

As more particularly set forth in Plaintiffs' Reply Memorandum In Further Support of Motion to Amend filed with the Court on July 31, 2007 ("Reply Brief"), it is not permissible for a defendant to hide a specific affirmative defense under the guise of a vague, catch-all assertion of failure to plead a cause of action. *Id.* at pp. 4-5. Rather than repeat and reassert authorities previously cited, Plaintiffs ask the Court to please refer those pages of their Reply Brief. Basically, the authorities state that the Court must look to whether Plaintiffs will be surprised or prejudiced; if they will be, then no such affirmative defenses should be allowed. *See e.g. Wolf v. Reliance Standard Life Ins.*, Co., 71 F.3d 444, 450 (1st Cir. 1995); *Saks v. Franklin Covey Co*, 316 F.3d 337, 350 (2nd Cir. 2003) (emphasis added)[7].

---

WL 1200184 (N.D. I11. May 28, 2004). (purpose of Rule 8 (c) is to give the opposing party notice of affirmative defense and a chance to rebut it).

[7] *See also Tancredi v. Dive Makai Charters*, 823 F.Supp. 778, 785-6 (D.Ct. Hawaii 1993) (Defendant's general catch-all affirmative defense "was insufficient to provide such notice or prevent unfair surprise to the opposing party"); *Rademacher v. Colorado Ass'n of Soil Conservation Districts Medical Ben. Plan,* 11 F.3d 1567, 1571 (10th Cir. 1993)( "**A naked assertion that a plaintiff's complaint fails to state a claim will not, by itself, excuse a defendant's failure to timely present and argue available defenses to the district court"**) (emphasis added). *Dobbs v. Vornado Inc.* 576 F.Supp. 1072, 1081 (E.D.N.Y. 1983) (unalleged affirmative defense cannot be raised by general denial). *See generally* 5 Wright and Miller *Federal Practice and Procedure*, § 1278 pp. 485-489 ("Thus, for example, an unalleged defense cannot be proven under a general denial").

As Defendant's proffer of "failure to state a cause of action" did not give Plaintiffs' fair notice of any specific affirmative defenses, and Plaintiffs will be greatly prejudiced as the deadline for discovery and to designate experts has passed and there is only six weeks before trial, Defendant should not be allowed to present any evidence at trial related to either of these two specific affirmative defenses, or any other un-named defense, at trial.

### 4. It Is The Law Of The Case That Defendant Did Not Assert Such Affirmative Defense

Defendant made the same argument in its Opposition to Plaintiffs' Motion to Motion, that the Air Worthiness Doctrine was stated as an affirmative defense hidden in its Failure to State a Cause of Action. However this Court has already found that no such defense was asserted. Order at p. 2, lines 6-10. Hence it is the law of this case that no such affirmative defense was asserted. It therefore is waived and Defendant cannot present any evidence related to this defense or any other defense not pled with sufficient particularity in its Answer to give Plaintiffs "fair notice" of such defense.

### 5. Plaintiffs Conducted Discovery As To Defendant's Denial Of Liability In General And This Particular Affirmative Defense In Particular.

In their Opposition to Motion to Amend, Defendant misrepresented to the Court that Plaintiffs conducted "no discovery" as if they had, Plaintiffs would have learned about the Air Worthiness Doctrine, Opposition at pp. 3,9, as it was "always there for simply for the asking, *Id.* at p. 11. To begin with, defendant had an obligation to disclose this affirmative defense so that Plaintiffs were given "fair notice". Hence, this argument fails as a matter of law. But it not only flawed legally, this argument is factually inaccurate. As discussed in Plaintiffs' Reply Memorandum, this is a (perhaps) sanctionable assertion: Plaintiffs DID conduct discovery. Reply Brief, pp. 5-8 and Declaration of Counsel at paras. 1-5 and 9-17.

Defendant was specifically and repeatedly asked questions and asked to produce documents about its affirmative defenses and denial of liability in general and its assertion of failure to state a cause of action in particular. Plaintiffs were told by Defendant through its responses that its defenses in general and this defense in particular were basically this: a. the stairs are safe and b. Plaintiff fell because he was not paying attention. *See* Declaration of David G. Banes filed in support of Plaintiffs' Motion to Amend, paras 1-13, and 17, Exhibits A and B, and Reply Brief at pp. 5-8.

Hence despite Defendant's assertion to the contrary, Plaintiffs conducted discovery as to affirmative defenses and **was led to believe that it was only related to Defendant's assertion that Mr. Fejeran caused his own injury**. Certainly there was nothing in Defendant's Response that would, as Defendant has represented to the Court, that put Plaintiffs on notice about this defense being anything but related to Freedom Air's contention he fell to his own negligence. *Id.*

**C. Even Assuming Defendant Properly Plead The Warsaw Convention As An Affirmative Defense, The Warsaw Convention Does NOT Apply.**

Defendant also failed to assert the Warsaw Convention as an affirmative defense. So for the reasons stated above, Defendant should not be allowed to use this Convention at trial. Defendant will likely argue Plaintiffs were put on notice of such a defense as it was pled as a basis for jurisdiction. However asserting the Warsaw Convention as a basis for jurisdiction is a far cry from asserting it as an affirmative defense with sufficient particularity. But even if this Court were to find that Defendant did put Plaintiffs on adequate notice that the Warsaw Convention was going to be used as more than a jurisdictional hook, the treaty still does not apply here and to introduce it at trial would risk significant confusion of the issues. Defendant

treats the applicability of the Warsaw Convention as a foregone conclusion.[8] However, ***the Warsaw Convention is entirely inapplicable.***[9] The Warsaw Convention cannot, by its own terms, apply to Mr. Fejeran's flight to Rota. Furthermore, Defendant offers no authority to support why the conclusory statements of one of Defendant's employees should overturn the Language of the Convention itself and well-established Ninth Circuit precedent.

**1. The Warsaw Convention Applies To Limited Circumstances, None Of Which Are Present.**

  **a. The Warsaw Convention Only Applies to Contracts For International Transportation.**

The Warsaw Convention only applies to "international carriage of persons, baggage, or goods performed by an aircraft for hire". Article 1(1). Article 1(2) of the Warsaw Convention explains that "international carriage" is travel where:

> according to the contract made by the parties, the place of departure and the place of destination … are situated either within the territories of two High Contracting parties [to the Convention], or within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this convention.

Put another way:

> the Convention will apply in two situations. First, it applies, if according to the contract of transportation (e.g., a plane ticket), travel will be from one High Contracting Party to another. Second, if the contract of transportation provides for

---

[8] Defendant provides authority supporting the proposition that the Warsaw Convention is an exclusive remedy. However, the applicability of the Warsaw Convention was ***not the issue*** in these cases, but rather whether or not it was the ***exclusive*** remedy ***if it in fact applied.***. *See El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng,* 525 U.S. 155 (1999), *Carey v. United Airlines,* 255 F3d 1044 (9th Cir. 2001), *Dazo v. Gobe Airport Security Sevices,* 295 F.3d 934 (9th Cir. 2002), *Husmann v. Trans World Airlines, Inc.,* 169 F.3d 1151 (8th Cir. 1999), *Mbaba v. Societe Air France,* 457 F.3d 496 (5th Cir. 2006) and *Bernardi v. Apple Vacations,* 236 F. Supp. 2d 465 (E.D. Pa. 2002). None of these cases in any way supports the proposition that a flight from U.S. Commonwealth to a U.S. Territory, with no stops, is governed by the Warsaw Convention.

[9] Defendant also seems to insinuate that its position is somehow stronger because this basis for jurisdiction is "unchallenged". Opposition at 9. While it is true that Plaintiffs have never challenged this particular basis for jurisdiction in this Court by no means indicates an agreement with the applicability of the Warsaw Convention. Plaintiffs have never agreed that this treaty applies, but did not move to remand this case back to Superior Court because they agreed that the alternative basis for jurisdiction offered by Defendants—diversity--exists. The Warsaw Convention does not, and never did, apply here and Plaintiffs have never indicated otherwise.

> travel from a High Contracting Party, for stops abroad, and then for a return to that same High Contracting Party, then the Convention also applies.

*Lee v. China Airlines, Ltd.,* 669 F.Supp 979, 980 (C.D. Cal. 1987). It is "the intention of the parties as expressed in the contract of transportation, *i.e.,* the ticket or other instrument, [that] determines the final destination" for purposes of determining if the Warsaw Convention applies. *Sopcak v. Northern Mountain Helicopter Service,* 52 F.3d 817, 819 (9th Cir. 1995). Since the contract of travel was not between two High Contracting Parties and there were no stops along the way from Saipan to Rota, the Warsaw Convention does not apply - - it is legally irrelevant if the flight passed over international waters (a fact Plaintiffs do not concede).

### b. The Ticket Contemplated NO Transportation Between Two High Contracting Parties And There Were NO Stops Anywhere Along The Way.

Mr. Fejeran's ticket contemplated a trip from Saipan to Rota and back again. *See* photocopy of Mr. Fejeran's ticket attached hereto as "Exhibit F." One can clearly see in the "Origin/Destination" section the annotation "S-R-S", indicating at the time he secured the ticket, the Defendant's agent (who filled out the ticket) understood him to be traveling from Saipan ("S") to Rota ("R") and back to Saipan ("S").[10] *Id.* Since this is travel from one point in the United States to another point within the United States, "the place of departure and the place of destination" ***are not*** "situated … within the territories of two High Contracting parties."[11] Warsaw Convention Article 1(2).

Furthermore, since the flight from Saipan to Rota did not stop anywhere on the way, it is patently impossible that there was "an agreed stopping place within a territory subject to the

---

[10] "**What matters is the final destination of the passengers and not the plane**." *Coyle v. P.T. Garuda Indonesia,* 363 F.3d 979, 991 (9th Cir. 2004) (emphasis added)(holding that just because two persons on vacation in Indonesia were eventually going to return home to the U.S. did not matter when a distinct and separate ticket was purchased for domestic travel in Indonesia). The final destination of that aircraft could have been Guam, Japan, China, the UK, Egypt, or any other destination on the face of the planet, and the outcome of this analysis would be the same. Since Mr. Fejeran's contract with Defendant contemplated travel within one High Contracting Party and no stops anywhere else, the Warsaw Convention *just does not apply*.

[11] In any event, even if Mr. Fejeran had purchased his ticket to travel all the way through to Guam and then return to Saipan, this still would not have been "a contract for international travel" because Guam is a US territory and part of the same "High Contracting Party." Defendant has cited to no legal authorities to the contrary despite having the burden of proof.

sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this convention." *Id.*

### c. The Ticket Also Gave No Notice That The Warsaw Convention Applies.

It is even more apparent that the Parties did not contemplate "international carriage" because the ticket issued to Mr. Fejeran did not contain the notice that the Warsaw Convention mandates. Article 3(2) of the Warsaw Convention mandates that certain language be printed on airline tickets purchased for "international carriage". There is no such language present on Mr. Fejeran's ticket. *See* Exhibit F. Hence, apparently even Defendant did not contemplate that the trip from Saipan to Rota was "international" at the time it issued the ticket to Mr. Fejeran. It is *that* and not whatever expedient position benefits their trial strategy that determines whether or not the Warsaw Convention applies. That Defendant ***did not*** place the mandatory notice required by the Warsaw Convention on the ticket issued to Mr. Fejeran speaks volumes as to how much it must have thought this was "international transportation".

Put simply, the flight upon which Mr. Fejeran was injured fits neither of the two exclusive scenarios that would satisfy the Warsaw Convention's definition of "international carriage" and nothing on the ticket would indicate otherwise. Therefore, the Warsaw Convention can not apply to this case.

### 2. Defendant Has Not Provided ANY Authority As To Why This Court Should Depart From The Established Interpretation Of The Warsaw Convention.

Defendant does not cite to any case law, nor to the language of the Convention, nor to any law review article, nor to any FAA regulation nor to any FAA proclamation nor to any declaration from a Warsaw Convention author (or expert) or even an FAA official to support its contention. The only support it offers is the conclusory and self-serving declaration testimony of one of its employees Richard Brown ("Mr. Brown") to convince this Court that the flight upon which Mr. Fejeran was hurt involved a "contract for international travel" under the Warsaw

Convention. Opposition at 9. His bare, probably hearsay, conclusory and bald statements are the sum total of what Defendant offers to support this proposition.

While Mr. Brown tells us in summary fashion that he is an authority on "how the Warsaw Convention applies to international air travel" he does not, in fact, provide any authority to support his conclusions, persuasive or otherwise, nor does he provide any foundation for how he is qualified to render expert testimony on the applicability of the Warsaw Convention nor how he specifically became an authority or how he learned of such an interpretation. *See generally* Brown Decl.

In truth, all he does is recount, anecdotally, that the Federal Aviation Administration and the Department of Transportation have characterized the flight from Saipan to Rota as "international" in completely unrelated circumstances. Brown Decl., ¶¶ 6-9. Strikingly, Mr. Brown asserts these legal conclusions without reference to a single interpretive case or FAA regulation. Such hearsay, conclusory statements should not be admissible and certainly are not persuasive.

But more to the point, his opinion as to DOT and FAA regulations have ***nothing to do with how the Warsaw Convention, as interpreted by Federal Courts, views the contract between Mr. Fejeran and the Defendant.***[12] Mr. Brown conflates two very divergent legal analyses. Perhaps the flight in question is "international" for the purposes of FAA and DOT regulation and safety standards (Plaintiffs do not concede it does). But even if true, ***this does not automatically make it "international carriage" under the Warsaw Convention.***

With all due respect to Mr. Brown, he does not determine how international treaties will be interpreted by United States Federal Courts. In any case, since his opinion, such that it is, is

---

[12] Defendant provides ***no*** authority to stand for the novel proposition that Mr. Brown's opinion should overrule well-established jurisprudence interpreting the applicability of the Warsaw Convention.

contradicted by the language of the Warsaw Convention itself and Ninth Circuit precedent, *Coyle v. P.T. Garuda,* 363 F.3d at 991, *Sopack* 52 F.3d at 819 and *Lee v. China Airlines,* 669 F.Supp. at 980, it is irrelevant. Certainly it is not enough to meet Defendant's burden of proving the applicability of the Warsaw Convention let alone to convince this Court to ignore binding Ninth Circuit authority.

## II. ALTERNATIVELY PLAINTIFFS SHOULD BE ALLOWED TO AMEND THEIR COMPLAINT, RETAIN AN EXPERT AND CONDUCT DISCOVERY

The Court denied Plaintiffs' Motion to Amend stating it was "too late" even though the Court acknowledged Plaintiffs' argument that the proposed amendment was in response to Defendant's last minute assertion of an affirmative defense under the doctrine of "air worthiness". Order at p. 2, lines 6-10. The Court nonetheless denied Plaintiffs' Motion finding that Defendant "has not asserted any such affirmative defense," and so, "such an amendment is not needed to counter a non-existing affirmative defense." *Id.* If the Court however should deny Plaintiffs' Motion and so allow Defendant to present evidence as to this defense, Plaintiffs proposed amendment is needed to counter this defense. Hence, Plaintiffs hereby renew their Motion to Amend, to Enlarge Time to Designate An Expert and to Conduct Discovery.

Otherwise, Defendant will reap the benefits of failing to disclose an affirmative and purposefully conducting misleading discovery, having two years to prepare their defense, while Plaintiffs will be deprived of a fair trial.

## CONCLUSION

Defendant must be precluded from asserting at trial any facts or legal theories not specifically asserted in their Answer - - especially their reliance on this so-called Air Worthiness Doctrine and Warsaw Convention. As Plaintiffs will be prejudiced as Defendant has failed to provide the necessary "fair notice" in order to conduct appropriate discovery, retain experts and prepare for a trial less than two months away.

|     |                                              |
| --- | -------------------------------------------- |
| 1   | O'CONNOR BERMAN DOTTS & BANES                |
| 2   | Attorney for Plaintiffs Moses T. and         |
|     | Qianyan S. Fejeran                           |
| 3   |                                              |
| 4   | By: _____/s/_____    |
|     |           DAVID G. BANES, ESQ.               |