1 | CARLSMITH BALL LLP

2 | DAVID LEDGER (CNMI BAR NO. F0195)
    ELYZE J. MCDONALD (CNMI BAR NO. F0358)
3 | Carlsmith Ball LLP Building
    Capitol Hill
4 | Post Office Box 5241
    Saipan, MP 96950-5241
5 | Tel No. 670.322.3455

6 | Attorneys for Defendant
    Aviation Services (CNMI), Ltd. dba Freedom Air

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN MARIANA ISLANDS

| MOSES T. FEJERAN and QIANYAN S. FEJERAN, Plaintiffs, vs. AVIATION SERVICES (CNMI), LTD. dba FREEDOM AIR, Defendant. | CIVIL ACTION NO. 05-0033<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION IN LIMINE TO EXCLUDE TESTIMONY OR EVIDENCE OF ANY AFFIRMATIVE DEFENSE NOT EXPLICITLY STATED IN THEIR ANSWER; DECLARATION OF RICHARD BROWN; DECLARATION OF DAVID LEDGER; EXHIBITS A-G; CERTIFICATE OF SERVICE**<br><br>HEARING DATE: AUGUST 21, 2007<br>TIME: 9:30 A.M. |
|---|---|

I.   **INTRODUCTION**

Plaintiffs Moses T. Fejeran and Qianyan S. Fejeran's Motion in Limine contends Defendant Aviation Services (CNMI), Ltd. dba Freedom Air has fabricated and advanced the "affirmative defense" of the "Airworthiness Doctrine" at the last minute. Nothing could be farther from the truth. At a minimum, Plaintiffs can not see, or understandably refuse to see, the distinction between an affirmative defense and evidence to rebut elements of the Plaintiffs prima

facie case. In this instance, Plaintiffs' lack of diligence in discovery has created the place between a rock and a hard spot they now find themselves in with trial looming. In particular, Plaintiffs grossly under estimated or entirely overlooked the evidence Freedom Air Director of Safety[1] Richard Brown has to offer in rebutting the breach of duty element of the prima facie case. Furthermore, Plaintiffs either ignored or simply overlooked such additional key evidence including answers to interrogatories and produced documents both of which should have been red flags to Plaintiffs.

Indeed Defendant has never used the term "Airworthiness Doctrine". However, the "airworthiness" of the aircraft has long been in sharp focus to rebut Plaintiffs' allegation that Defendant's aircraft was unsafe through improper maintenance or otherwise. In response to such allegation, Defendant identified Richard Brown as a person having knowledge and evidence to show that Freedom Air breached no duty owed to Plaintiffs. In particular, Plaintiff's Interrogatory No. 7 of Plaintiffs first set of interrogatories, and Freedom Air's answer, as of April 3, 2006 is as follows:

*Interrogatory No. 1*: Please IDENTIFY all PERSONS YOU contend have knowledge RELEVANT TO YOUR [Freedom Air's] **general and specific** denials that DEFENDANT [Freedom Air] breached its duty to maintain the methods and/or instrumentalities used by YOUR [Freedom Air] passengers to embark upon and disembark from YOUR [Freedom Air] aircraft in a reasonable safe manner as stated in YOUR [Freedom Air's] Answer.

*Response to Interrogatory No. 1*: Please refer to the names which appear on the

---

[1] One item to put to rest without further ado is Mr. Brown' position at Freedom Air. Plaintiffs lament the fact that when Mr. Brown was identified in interrogatory answers as a person having knowledge of Freedom Air's denial of a prima facie element, breach of duty, his position was stated as Director of Operations. Since then, his job title has changed to Director of Safety (Brown Decl. attached hereto). Plaintiffs disingenuously suggest that as Director of **Operations** Mr. Browns was an insignificant witness with nothing to say whereas as Director Of Safety, he suddenly has something very significant to say. It is difficult to understand how a person holding the position of Director of Operations with an air carrier could be considered an insignificant witness in a personal injury action where the cause of injury is alleged to be an unsafe aircraft.

*incident reports and statements produced by Defendant and the names disclosed in Defendant's Initial Disclosures. Additionally, Richard Brown, Director of Operations, and a safety expert yet to be retained and identified.*[2]

It is difficult to conceive a plausible reason why Plaintiffs took no discovery from Mr. Brown despite him being identified, **in April 2006,** as a person in possession of evidence to rebut a key element of Plaintiffs prima facie case. Defendant also produced, *within the discovery period*, the "Freedom Air Continuous Airworthiness Maintenance Program," which discusses Defendant's maintenance schedule in conformance with the aircraft's and the manufacturer's specifications. The manual does not lay out a "general" maintenance program but instead identifies specific maintenance requirements to specific components of the aircraft, ***including two specific references to the exit stair which is at the heart of Plaintiffs negligence allegations.*** Again, it is difficult to conceive a plausible reason why Plaintiffs did no discovery on a document which is clearly evidence in direct rebuttal to the prima facie case.[3] The document, along with testimony from Defendant's expert Rick Gill as to the implementation of a maintenance program in compliance with the manufacturer's and FAA's specifications, as well as other disclosures made in this case, speak directly to Plaintiff's allegations that Defendant owes a duty of due care to Plaintiffs and allegedly breached that duty. Thus, "airworthiness" is simply a label commonly used in aviation which is synonymous with "safety" of the stairs and the aircraft.[4]

Because maintenance and safety or airworthiness of the aircraft are critical issues in this case, and because both have been the subject of Defendant's defense and disclosures throughout

---

[2] Defendant timely retained and designated expert witness Rick Gill.
[3] It is likewise telling that in Plaintiffs motion to amend complaint and strike defenses Plaintiffs' counsel's Declaration cited almost every piece of evidence Defendant has disclosed in this case as grounds to show defendant has purposely "hidden" the airworthiness aspect of its defense, yet the Declaration curiously omitted the produced document titled ***Airworthiness*** Maintenance Program.
[4] For example, stairs in a building are "safe or unsafe" as opposed to "building worthy", whereas a "safe" component of an aircraft is commonly said to be "airworthy".

the litigation, there are no legal grounds to preclude Defendant from offering evidence on its maintenance and safety program and how that affects the airworthiness of the aircraft as a direct rebuttal to the prima facie case. In addition, neglecting to depose Richard Brown was a critical oversight. Had Plaintiffs done so, they would not now be seeking relief from the Court on grounds that freedom Air has "hid" theories and evidence.

Moreover, the Warsaw Convention applies to this case because the flight at issue is a designated "international flight", and because the purpose of the Warsaw Convention is to preserve the uniformity of laws applicable to air carriers flying internationally. As the basis for removal of this action is the Warsaw Convention, Plaintiffs have been on notice of Defendant's reliance on the Convention and its underlying jurisprudence and remedy structure.

## II. AIRWORTHINESS, OR SAFETY, HAS ALWAYS BEEN AN ISSUE IN THIS LITIGATION.

With respect to their arguments on airworthiness, Plaintiffs make two fatal errors in their Motion: first, characterizing airworthiness as an "affirmative defense", and second, claiming it was first revealed at the deposition of Defendant's expert Richard Gill. First, airworthiness is not an affirmative defense. "Affirmative defenses plead matters extraneous to the plaintiff's prima facie case, which deny plaintiff's right to recover, even if the allegations of the complaint are true." *FDIC v. Main Hurdman*, 655 F. Supp. 259, 262 (E.D. Cal. 1987) (citing *Gomez v. Toledo*, 446 U.S. 635, 640-41 (1980)). "As a general matter then, the pleading of an affirmative defense puts the plaintiff on notice that matters extraneous to his prima facie case are in issue and ordinarily allocates the burden of proof on the issue." *FDIC*, 655 F. Supp. at 262.

Whether or not the exit stair and aircraft are airworthy and safe is part of Plaintiffs' prima facie case for negligence. In their Complaint, Plaintiffs allege that Defendant owed a duty to Plaintiffs, breached that duty, such breach caused the Plaintiffs' injuries, and that Plaintiffs have suffered damages. As Plaintiffs themselves phrase the issue of duty and breach, Defendant had a

"duty to maintain its aircraft and the associated embarkation and disembarkation equipment in a reasonably safe condition" and that it breached that duty by failing to *maintain* the stairs in a reasonably safe condition. Compl., ¶¶ 16, 17.

In direct rebuttal to this allegation, Defendant has at numerous times provided Plaintiffs with evidence that nothing is wrong with the stairs, that Plaintiff Moses Fejeran's injuries are not caused by factors external to him, and that the stairs are maintained in accordance with the aircraft manufacturer's specifications. These discovery responses and disclosures speak directly to Plaintiffs' prima facie case, specifically, the allegation that Defendant has breached a duty of providing a reasonably safe environment for Mr. Fejeran.

There is a long history of "airworthiness" or safety being an issue subject to discovery in this case, discovery Plaintiffs simply neglected to undertake. As long ago as April 2006, Defendant served responses to Plaintiffs' First Set of Interrogatories. Ledger Decl., ¶ 5, Ex. A. In particular, Plaintiffs asked Defendant to explain its denial to the allegation that it breached a duty to maintain its instrumentalities. Defendant stated: "There was nothing wrong with the aircraft stair . . . . Said another way, the no-breach-of-duty defense is established by the *absence* of any fact which would show or even tend to show any unlawful act or omission on the part of Defendant." Ex. A at Interrogatory No. 6.

Also, in response to Plaintiffs' request for facts relevant to Defendant's allegations that the injuries sustained by Plaintiff Moses Fejeran were attributable wholly or in part to his own fault, Defendant referred Plaintiffs to its Response to Interrogatory No. 6 stating that "There was nothing wrong with the aircraft stair." Ex. A, at Interrogatory No. 9.

In response to Plaintiffs' interrogatory as to Defendant's version of how the occurrence happened, Defendant responded that "Nothing external to the passenger caused or contributed to

cause the incident." Ex. A, at Interrogatory No. 17.[5]

In that same document served back in *April 2006*, in response to a request for the names of persons with knowledge of this defense of no breach of duty, Defendant specifically named Richard Brown, Director of Operations, as well as a "safety expert yet to be retained and identified." Ex. A at Response to Interrogatory No. 7. **However, as previously noted, Plaintiffs never took the deposition of Richard Brown.**[6]

Had they taken the deposition of Mr. Brown, Plaintiffs would have learned volumes regarding Defendant's measures to comply with FAA rules and regulations regarding airworthiness of the Shorts 360 aircraft, Defendant's airworthiness maintenance program to maintain its airworthiness to fly, and the configuration of the aircraft as delivered by the manufacturer and as operated by Defendant. Brown Decl., ¶ 7. They would have learned that the FAA issued an airworthiness certificate for the Shorts 360 aircraft on which Mr. Fejeran was a passenger. Brown Decl., ¶ 7. Such certificate in essence informs Freedom Air that, **as configured by the manufacturer**, the Shorts 360 is deemed safe to fly and carry passengers in commercial passenger operations. Brown Decl., ¶ 7. Mr. Brown would have testified that to maintain this airworthiness rating, Freedom Air must perform required maintenance in accordance with Freedom Air's Airworthiness Maintenance Manual, which, in turn, accurately follows the Manufacturer's **FAA-approved** Maintenance Manual, and that Freedom Air has not

---

[5] "External to the passenger" is a routine term used repeatedly in aviation personal injury cases. It means simply that an instrumentality, a part of the aircraft, external to the passenger caused the injury. For example, an overhead bin that falls down. If an injury is not caused by an event external to the passenger, then the air carrier is not liable. For example, when a passenger's individual sensitivity to changes in cabin air pressure causes an ear injury. In other words, to a practitioner with a basic working knowledge of aviation personal injury the defense of "external to the passenger" means *nothing was wrong with the aircraft and that the aircraft is safe and airworthy.*

[6] The excuse given for this gross oversight in discovery is that Plaintiffs assumed that because Mr. Brown was identified in the same interrogatory answer as persons who gave statements concerning the actual incident, that Mr. Brown had no knowledge different from what those people had already reported in there statements. Mr. Brown did not witness the incident and for that reason gave no statement. Plaintiffs can assume anything they want about what knowledge Mr. Brown has or does not have but if they assume wrong it's their problem. Plaintiffs asked who had knowledge to support Defendant's denial of a breach of duty and we told them.

modified the stair from its original design and configuration. Mr. Brown would have explained that Freedom Air is not permitted to alter the configuration of the aircraft or integral components of it simply because Freedom Air might conceive of a way to improve on the original design. Brown Decl., ¶ 7. Mr. Brown would have testified that that the fold-down exit stair used by Mr. Fejeran is an integral part of the aircraft, in other words, that it is "original equipment" installed by the manufacturer. Brown Decl., ¶ 7. Simply put, with a single deposition on Guam Plaintiffs could have discovered Mr. Brown's wealth of knowledge about which they now claim surprise. Brown Decl., ¶ 7. However, because Plaintiffs instead elected not to follow up on the disclosure of Mr. Brown as a person with knowledge that Defendant did not breach any duty of due care, Plaintiffs forfeited a golden opportunity to be informed about Defendant's defense to the prima facie element of breach of duty. Yet, the foregone opportunities to learn about Defendant's case did not end with the failure to depose Mr. Brown.

On April 16, 2007, Defendant served its Third Supplemental Rule 26 Disclosures which contained the "Freedom Air Continuous Airworthiness Maintenance Program." Ledger Decl., ¶ 6, Ex. B. This Program disclosed that the aircraft is subject to airworthiness maintenance in accordance with the manufacturer Short Brothers' SD3-60 maintenance Program. In addition to its previous disclosures, the Airworthiness Maintenance Program put Plaintiffs on resounding notice of the relevance of the aircraft's safety and airworthiness. On that same day, Defendant served its *Second Supplemental* Responses to Plaintiffs First Set of Discovery Requests - Interrogatories. Ledger Decl., ¶ 7, Ex. C. Plaintiffs posed an interrogatory requesting that Defendant explain any modification, alteration, repair, renovation, upkeep and/or maintenance to the aircraft. Ex. C, at Interrogatory Nos. 1, 2. Defendant responded that "Detailed inspections are performed as per the Short Brothers SD3-60 maintenance program." Ex. C, at Interrogatory Nos. 1, 2. In addition to the Airworthiness Maintenance Program produced on the same day, this

interrogatory response put Plaintiffs on yet more notice that the maintenance program is followed in accordance with the manufacturer's specifications of airworthiness. A horse can be led to a pool filled with a wealth of information but can not be made to partake of it.

On May 2007 Defendant produced Mr. Gill's report which made the following observations, yet once again *putting Plaintiff on notice of Freedom Air's defense* to the breach of duty allegation:

· Inadequate or defective maintenance was not a contributing factor to Mr. Fejeran's alleged stairway fall accident.

· "There is no evidence to support any allegation that the subject stairway was *not deployed in a manner consistent with the manufacturer's specifications.*"

· "There is no evidence to support any allegation that the subject stairway was *not utilized in a manner consistent with the manufacturer's intention for the routine disembarkation from the aircraft.* In fact, no such allegation has been made by Mr. Fejeran, nor his expert Dr. Perez."

· "The design of the subject stairway *is typical for built-in or fixed stairways in commuter aircraft.* There is no evidence to support any allegation that *the general design characteristics* of the subject stairway somehow contributed to Mr. Fejeran's alleged stairway fall accident. The general design configuration *is common to that of most commuter aircraft with built-in fixed stairways .*"

Ex. D at 2-3 (emphasis added). Mr. Gill concluded that "the subject stairway that Mr. Fejeran encountered at the time of his alleged fall was neither unusual nor unexpected. Rather, *the design, condition, operational protocol, and so forth were all consistent with the normal operation of any comparable such aircraft.*" Ex. D at 4 (emphasis added).

Plaintiffs had this report in their hands in May 2007 and were therefore on notice that the

aircraft's disembarkation stair is designed and/or built by the manufacturer of the aircraft and in the case of commercial transport aircraft in compliance with federal regulations applicable to such aircraft. Therefore, their claims that they only heard of this defense in the deposition of Mr. Gill simply shows that, in addition to not taking any discovery from Freedom Air on the issue, they failed to read or understand Mr. Gill's report.[7]

During Mr. Gill's deposition, Mr. Gill revealed the source of his information that nothing was wrong with the aircraft stairs, and that the stairs are maintained in conformance with the manufacturer's specifications: Richard Brown, the same person disclosed in April 2006, and the same person who Plaintiffs chose not to depose.[8]

> A. [I]n our discussions this morning, the name Richard Brown had come up. And I believe he's director of operations and safety at Freedom Air. And through discussions that Mr. Ledger has had with Mr. Brown, Mr. Brown's communication to Mr. Ledger are consistent with my understanding, and that is that the FAA would not allow them to go through and design, modify, or install a new set of stairways. …
>
> Q. Okay. So you're relying on a statement by an employee of Defendant Freedom Air -- communicated through their lawyer to you?
>
> A. I would say that corroborates my prior understanding.

Ex. E at 21:19 - 22:7. *See also* Ex. E at 13:10 - 14:10 (Gill states that his report disclosed Defendant's conformance with safety requirements because he felt it was important to make sure that Defendant was using the airframe of the aircraft in the manner that it was intended). Gill's testimony reveals that Mr. Brown possessed the factual information about Defendant's limitations to modify the stairs, and Defendant's requirements to maintain the stairs. As already noted, Mr. Brown's identity was disclosed to Plaintiffs in April 2006, ***more than one year before***

---

[7] Furthermore, Defendant respectfully reminds the Court that but for Plaintiff's refusal to produce its expert's report absent a motion to compel and Court order, Plaintiff would have had Mr. Gill's rebuttal and report approximately six months earlier.

[8] Mr. Gill is the "safety expert yet to be retained and identified." Ex. A at Response to Interrogatory No. 7.

*Mr. Gill testified at his deposition.*

In contrast to Plaintiff's contention, and as explained above, the "airworthiness doctrine" was not "revealed" at Mr. Gill's deposition.[9] In fact, nowhere in Mr. Gill's deposition is the term "airworthiness" used. However, just as it was throughout this case, Defendant consistently maintained its position that the aircraft is safe, which Gill expands upon in his deposition, and which is discussed in discovery responses and documents disclosed during discovery.

As the issue of safety and airworthiness is an issue in response to an element of Plaintiffs' prima facie case, and as this issue has been subject to an entire stream of discovery and disclosures in this case, there is absolutely no justification for precluding any evidence of safety and airworthiness at the trial in this case.

### III. IF AIRWORTHINESS IS AN AFFIRMATIVE DEFENSE, IT HAS NOT BEEN WAIVED.

The Ninth Circuit has adopted a liberal approach towards the waiver of affirmative defenses not pled in a responsive pleading. *See Wyshak v. City Nat. Bank*, 607 F.2d 824 (9th Cir. 1979); *Towe Antique Ford Found. v. I.R.S.*, 1991 WL 325792 (citing *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir.1984)).

One method the Ninth Circuit has used to liberalize the requirement is by allowing an affirmative defense to be asserted through a pretrial order, which controls the subsequent course

---

[9] "Airworthiness" was referenced in Plaintiffs' expert's deposition, in which Defendant equated "airworthiness" with safety:

> Q.  ... [I]f that stair that we're talking about, which the manufacturer installed, it's in the airplane, and in order for this airplane to carry passengers in the United States the FAA has to certify it. Obviously, the plane has been certified because they are flying in the United States. So would that affect your thinking or your opinion that the stair, as installed, is unsafe or defective?
> . . . So on that basis, would that change your thinking or your opinion about the airworthiness or the -- the safety or unsafety characteristics of the stair?
> A   It still doesn't, because ...
> ... Because, I believe, this is not a safe stair.

Ex. F at 27:1 - 28:8. "Airworthiness" is mentioned only one other time during Perez's deposition, when Perez stated he did not understand the term. *See* Ex. F at 100:7-9.

of action in the litigation. *See Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 924 (9th Cir. 1988). Here, the Court has not yet issued its pretrial order, and may incorporate any defenses that Plaintiffs claim have been newly raised, but are in actuality only newly discovered due to Plaintiff's lack of diligence in discovery. Furthermore, even if the affirmative defense, as it is labeled by Plaintiffs, is in fact such, there are no previously undisclosed facts or evidence which would be offered in support of it. Thus regardless of the label used, any prejudice to Plaintiffs is of there own making by lack of diligence in flushing out what it is defendant has been saying all along. [10]

Also, "[s]trict adherence to Federal Rule of Civil Procedure 8(c) is not required so long as no prejudice results." *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993). "Under some circumstances, and particularly where there is no prejudice to the plaintiff, an affirmative defense may be raised prior to trial even if it was not specifically pled as an affirmative defense." *Towe*, 1991 WL 325792.[11]

This is the rule in other circuits. "If an affirmative defense is raised in a manner that does not result in unfair surprise to the opposing party, failure to comply with Rule 8(c) will not result in waiver of the defense." *Peterson v. Air Line Pilots Ass'n. Int'l*, 759 F.2d 1161, 1164 (4th Cir. 1985). *See also Resolution Trust Corp. v. Baker*, 1994 WL 637359 (E.D. Pa. 1994) (a defendant's assertion of an affirmative defense is adequate when it gives the plaintiff fair notice of the defense). *Baker v. City of Detroit*, 483 F. Supp. 919, 921 (D. Mich. 1979) (what matters is not whether the magic words "affirmative defense" appears in pleadings, but whether the Court

---

[10] We also wish to clarify what we perceive as possible confusion on Plaintiff's part. It would seem that Plaintiff is contending that Freedom Air can not testify that it is absolved or insulated from liability simply because it flies a certified airworthy aircraft maintained in accordance with manufacturer and FAA requirements. That is not the testimony to be offered. Rather, based on the evidence which will be offered, that is the ultimate conclusion Freedom Air will urge the jury to render after hearing the evidence.

[11] In *Towe*, the defendant alluded to a fraudulent conveyance defense during the summary judgment proceedings, and had not specified the defense in a responsive pleading. The Court disallowed a motion in limine seeking to preclude evidence of the fraudulent conveyance.

and the parties were *aware of the issues involved*).

As discussed above, if there has been any prejudice to Plaintiffs, it has been of their own making by their failure to conduct prompt and adequate discovery. Defendant's defense theories have always been readily available to be explored by Plaintiffs through depositions of Defendant (in particular Richard Brown) and through its expert report. In addition to being told that Richard Brown had knowledge concerning Defendant's defense to allegations of improper maintenance and safety, Plaintiffs on numerous occasion mentioned taking depositions from Freedom Air, including a 30(b)(6) deposition, yet never followed through. It is hardly surprising that Plaintiffs now concern themselves over viable theories which were always there simply for the asking. Furthermore, as confirmed by Mr. Gill during his deposition, this is hardly a new theory in that Mr. Gill's written report and testimony took account of information possessed by Richard Brown.

There is no justification for precluding Defendant from presenting evidence of a defense it disclosed, whether in defense to Plaintiffs' prima facie case or as an affirmative defense, due to Plaintiffs' lack of diligence in informing themselves of what that defense encompassed. As the topics of airworthiness and maintenance have been well-disclosed, Plaintiffs have not and will not suffer any prejudice by the same evidence being offered at trial.

### IV. PLAINTIFFS HAVE SIMILARLY HAD FAIR NOTICE OF THE APPLICABILITY OF THE WARSAW CONVENTION.

Because the primary grounds for the removal of the action is the Warsaw Convention, Plaintiffs similarly had fair notice of Defendant's reference to the Warsaw Convention. Also, Plaintiffs can hardly claim surprise when the Warsaw Convention has been the subject of settlement discussions as well. As the Warsaw Convention has been part of this action since Defendant removed the case, Plaintiffs have not and will not suffer any prejudice by the assertion of the applicability of the Warsaw Convention.

V. **WARSAW CONVENTION APPLIES**

The flight at issue is operated as international by Freedom Air and is so classified by the Federal Aviation Administration. Richard Brown, Defendant's former Director of Operations, and current Director of Safety, who institutes Defendant's procedures for compliance with the Warsaw Convention, declares that Freedom Air operates the entire Guam-Rota-Saipan-Rota-Guam flight in compliance with FAA and DOT rules and regulations for international air travel. Ex. G at ¶ 6. During each leg, the flight reaches international airspace and is classified as international air travel. Ex. G at ¶¶ 6, 9.

As further support that the flight traverses international airspace, Defendant operates all legs of the Guam-Rota-Saipan-Rota-Guam flight as a Flag Carrier authorized by FAR Part 121 which pertains to flights in international air transportation. *See* 14 CFR Part 119.3. Ex. G at ¶ 7.

Mr. Brown further declared that in his experience with Pacific Island Aviation, the FAA concluded that PIA's Guam-Rota-Saipan-Rota-Guam flight, including the Saipan-Rota leg was deemed to be an international flight in international airspace. Ex. G at ¶ 8.

"The cardinal purpose of the Warsaw Convention . . . is to achieve uniformity of rules governing claims arising from international air transportation." *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 169 (1999) (internal citation omitted). "[A] fundamental purpose of the signatories to the Warsaw Convention, which is entitled to great weight in interpreting that pact, was their desire to establish a uniform body of world-wide liability rules to govern international aviation, which would supersede with respect to international flights the scores of differing domestic laws, leaving the latter applicable only to the internal flights of each of the countries involved." *Reed v. Wiser*, 555 F.2d 1079, 1090 (2nd Cir. 1977) (emphasis supplied).

Uniformity of laws governing international travel applies not just to passengers curious as to which laws apply, it applies to carriers as well. "Uniformity is required to allow airlines to . . .

reduce inconsistent outcomes." *Rogers v. American Airlines, Inc.*, 192 F. Supp. 2d 661, 665 (N.D. Tex. 2001). *Reed* cited to testimony from the Administrator of the FAA that "[t]he Warsaw Convention, by providing a uniform rule of law which governs the relationship of the airline operator and his passenger or shipper in all of these different situations has for almost 40 years provided a degree of certainty making it possible for the individual passenger or shipper and the airline operator to be reasonably certain what their legal relationship with each other is, and to act accordingly." *Id.* at 1091.

The flight is considered international by the FAA, the DOT, and by Defendant. It travels in international airspace, even in the Saipan-Rota leg. The cardinal purpose of the Warsaw Convention – uniformity – is defeated if domestic rules are to apply to passengers disembarking in Rota, and international rules are to apply to those who disembark in Guam. Plaintiffs' position imposes different sets of liability rules for separate passengers on Defendant's aircraft flying from Saipan to Rota, depending on whether they ultimately land at Rota or Guam. If such is the case, Defendant cannot be reasonably certain as to what rights govern which passengers. Under Plaintiffs' position, Defendant can only be certain that different laws and conflicting remedies would govern one passenger claiming under CNMI domestic laws and another claiming under the Warsaw Convention. With regard to both liability and damages, Warsaw and local law are markedly different. In essence, Plaintiffs' position violates the "cardinal" principle and purpose of the Warsaw Convention.

## VI.  PLAINTIFFS SHOULD NOT BE ALLOWED TO AMEND THEIR COMPLAINT.

On August 9, 2007, the Court ruled denied Plaintiffs' Motion to Amend the Complaint to include an action under the Commonwealth's Consumer Protection Act. The Court found that the amendment will "unduly delay the trial and waste the resources of the court and the parties." Defendant objects to this highly improper second request, and reincorporates its arguments in

opposition as stated in its Opposition to Plaintiff's Motion to Amend Complaint and to Allow Deposition of Defendant, filed on July 26, 2007.

### VII. CONCLUSION

Plaintiffs' lack of diligence is the root of their present dilemma. They claim that Defendants have newly and untimely advanced an affirmative defense of an "airworthiness doctrine," when in fact, the defense of the plane being airworthy, or safe in other words, has been an issue in this case since Plaintiffs first alleged the plane was unsafe and not maintained. Defendants have provided Plaintiffs with disclosures that nothing was wrong with the plane, with a document showing Defendant's airworthiness maintenance program, with an expert report regarding the plane's maintenance, and the name of Defendant's representative who had particular knowledge of this defense. Plaintiffs have failed to take advantage of these opportunities, though they had fair notice. They cannot claim prejudice or unfair surprise.

Moreover, they cannot claim prejudice or unfair surprise with respect to the Warsaw Convention, which served as the basis for removal of this case.

Finally, the Warsaw Doctrine applies to this case as it is a designated international flight by the FAA and operated as such by Freedom Air.

For these reasons, and those discussed herein, the Court should deny the motion in limine.

DATED: August 16, 2007.

CARLSMITH BALL LLP

_____
DAVID LEDGER
ELYZE J. MCDONALD
Attorneys for Defendant
Aviation Services (CNMI), Ltd.
dba Freedom Air

4853-2323-2513.1.059303-00001                                15.

1  CARLSMITH BALL LLP

2  DAVID LEDGER (CNMI BAR NO. F0195)
   ELYZE J. MCDONALD (CNMI BAR NO. F0358)
3  Carlsmith Ball LLP Building
   Capitol Hill
4  Post Office Box 5241
   Saipan, MP 96950-5241
5  Tel No. 670.322.3455

6  Attorneys for Defendant
   Aviation Services (CNMI), Ltd. dba Freedom Air
7

8
                    UNITED STATES DISTRICT COURT
9
                              FOR THE
10
                     NORTHERN MARIANA ISLANDS
11

12
   MOSES T. FEJERAN and                CIVIL ACTION NO. 05-0033
13 QIANYAN S. FEJERAN,

14            Plaintiffs,

15       vs.                            **DECLARATION OF**
                                        **RICHARD BROWN**
16
   AVIATION SERVICES (CNMI), LTD.
17 dba FREEDOM AIR,

18            Defendant.

19
        I, RICHARD BROWN, pursuant to 28 U.S.C. Section 1746, declare under penalty of
20
   perjury that the following statements are true and correct:
21
        1.   I have personal knowledge of the facts stated in this declaration except as
22
23 otherwise indicated.

24      2.   I would testify competently to these facts if called by the Court to do so.

25      3.   At present, I am employed by Freedom Air as Director of *Safety*. On April 3,
26
   2006, when Freedom Air answered Plaintiffs first set of interrogatories, my position was
27
   Director of *Operations*.
28

4814-3085-2865.1.059303-00001

4. Previous to my employment with Freedom Air, I was employed for thirty seven (37) years in the aviation industry as a commercial airline transport pilot and held a transport pilot license issued by the FAA. Prior to that, I had seven (7) years experience in the US Navy in aviation maintenance, trained as both a Naval Aviator and an Aircraft Maintenance Officer. I retired from FAR 121 commercial transport flying upon reaching mandatory retirement age of 60. During my 37 years as a commercial transport pilot I was required to be constantly aware of FAA requirements and rules concerning compliance with airworthiness and safety. In previous positions with other carriers and with Freedom Air, in management positions, I was required to have extensive knowledge of regulations and policies pertaining to both operations and maintenance including their proper implementation.

5. In my present position at Freedom Air I am responsible to monitor and ensure Freedom Air's compliance with FAA rules and regulations applicable to the airworthiness of Freedom Air aircraft, in particular the Shorts 360.

6. Plaintiff's Interrogatory No. 7 of Plaintiffs first set of interrogatories, and Freedom Air's answer, as of April 3, 2006 is as follows:

Interrogatory No. 1: Please IDENTIFY all PERSONS YOU contend have knowledge RELEVANT TO YOUR [Freedom Air's] general and specific denials that DEFENDANT [Freedom Air] breached its duty to maintain the methods and/or instrumentalities used by YOUR [Freedom Air] passengers to embark upon and disembark from YOUR [Freedom Air] aircraft in a reasonable safe manner as stated in YOUR [Freedom Air's] Answer.

Response to Interrogatory No. 1: Please refer to the names which appear on the incident reports and statements produced by Defendant and the names disclosed in Defendant's Initial Disclosures. Additionally, Richard Brown, Director of Operations, and a safety expert yet to be retained and identified.

4814-3085-2865.1.059303-00001                           2.

7.     The knowledge I possessed on Aril 3, 2006 relevant to Interrogatory No. 7, and the answer that Freedom Air breached no duty to maintain the exit stair, is different from the persons whose names appear on the Freedom Air incident reports and statements. In particular, Freedom Air Ground Agent at Rota, Felicidad Boddy, has eye-witness knowledge of the manner in which Mr. Fejeran walked down the exit stair of the aircraft when the subject incident happened and wrote a statement describing what she personally observed. I do not have that same eye-witness knowledge because I was not present, and have only read Ms. Boddy's statement. Rather, the information I possessed on April 3, 2006 concerns Freedom Air's compliance with FAA rules and regulations regarding airworthiness of the Shorts 360 aircraft, Freedom Air's airworthiness maintenance program to maintain airworthiness, and the configuration of the aircraft as delivered by the manufacturer and as operated by Freedom Air. The FAA has issued an airworthiness certificate for the Shorts 360 aircraft on which Mr. Fejeran was a passenger. Such certificate in essence informs Freedom Air that, as configured by the manufacturer, the Shorts 360 is deemed safe to fly in commercial passenger operations. To maintain this airworthiness, Freedom Air must perform required maintenance in accordance with the Airworthiness Maintenance Manual for the Shorts 360 aircraft. I also have knowledge that the fold-down exit stair used by Mr. Fejeran is an integral part of the aircraft, in other words, that it is "original equipment" installed by the manufacturer. I also have knowledge that the stair is maintained in accordance with Freedom Air's Airworthiness Maintenance Manual, which accurately follows the Manufacturer's FAA-Approved Maintenance Manual, and that Freedom Air has not modified the stair from its original design and configuration. I also have knowledge that Freedom Air is not permitted to alter the configuration of the aircraft or integral components of it simply because Freedom Air might conceive of a way to improve on the original design. Had Plaintiff's legal counsel taken my deposition between April 3, 2006 and the May 31, 2007

1 | deadline to do so, I would have provided this information, and more, during the deposition.

2 | DATED: August 15, 2007.

*[signature]*

RICHARD BROWN

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 16th day of August 2007, I will cause to be served, via electronic filing/service, a true and correct copy of **DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION IN LIMINE TO EXCLUDE TESTIMONY OR EVIDENCE OF ANY AFFIRMATIVE DEFENSE NOT EXPLICITLY STATED IN THEIR ANSWER; DECLARATION OF RICHARD BROWN; DECLARATION OF DAVID LEDGER; EXHIBITS A-G; CERTIFICATE OF SERVICE** upon the following Counsel of record.

> David G. Banes, Esq.
> George L. Hasselback, Esq.
> O'Connor Berman Dotts & Banes
> Second Floor, Nauru Building
> Post Office Box 501969
> Saipan, MP 96950

DATED: August 16, 2007.

_(signature)_
DAVID LEDGER
ELYZE J. MCDONALD