CARLSMITH BALL LLP

DAVID LEDGER (CNMI BAR NO. F0195)
ELYZE J. MCDONALD (CNMI BAR NO. F0358)
Carlsmith Ball LLP Building
Capitol Hill
Post Office Box 5241
Saipan, MP 96950-5241
Tel No. 670.322.3455

Attorneys for Defendant
Aviation Services (CNMI), Ltd. dba Freedom Air

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MOSES T. FEJERAN and QIANYAN S. FEJERAN,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>AVIATION SERVICES (CNMI), LTD. dba FREEDOM AIR,<br><br>　　　　　　Defendant. | CIVIL ACTION NO. 05-0033<br><br>**DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT, DORIS SHRIVER; MEMORANDUM IN SUPPORT OF MOTION; DECLARATION OF DAVID LEDGER; EXHIBITS A-D; DECLARATION OF SERVICE** |

## <u>DEFENDANTS' MOTION IN LIMINE TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT DORIS SHRIVER</u>

Defendant Freedom Air respectfully moves this Court for an Order excluding the testimony of expert Doris Shriver on the issue of a "life care plan" for plaintiff.

Plaintiff intentionally failed to disclose the opinions of Ms. Shriver until it was too late for Defendant to obtain rebuttal expert opinion. Thus, Ms. Shriver's testimony should in fairness and as a remedy for late disclosure and prejudice be barred from trial.

1    This motion is brought pursuant to Rule of Evidence 403 and is supported by the attached

2  Memorandum, Declaration, and Exhibits.[1]

3        DATED: Hagåtña, Guam, September 5, 2007.

4  CARLSMITH BALL LLP

5

6                                                DAVID LEDGER
7                                                ELYZE J. MCDONALD
                                                 Attorneys for Defendant
8                                                Aviation Services (CNMI), Ltd.
                                                 dba Freedom Air

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  [1] Ms. Shriver's deposition was taken on August 27,2007 in Portland, Oregon.  As the transcript is not yet available at
    the time this motion is filed, Freedom Air reserves its right to supplement this motion upon receipt of the transcript
28  and exhibits from the court reporter.

### MEMORANDUM IN SUPPORT OF MOTION

## I.   INTRODUCTION

Among the damages Plaintiff seeks in this case are future medical care expenses based on a purported "life care plan" prepared by Ms. Shriver.  The purported plan alleges plaintiff is entitled to recover from defendant a whopping $504,000 for future medical care.  This Court should not permit Ms. Shriver to testify at trial on grounds that Plaintiff adroitly withheld Ms. Shriver's opinions until it was too late for defendant to locate and retain a rebuttal expert. Accordingly, the testimony should be excluded under Rule 403, as any probative value it may have is outweighed by unfair prejudice to defendant.

In particular, given the discrete expertise involved in preparing a "life care plan" of future medical expenses, it has so far proven impossible for defendant to locate and retain a rebuttal expert. This is due not only to the untimely last-minute disclosure of Ms. Shriver's opinions, but also to Plaintiff's intentional and adroit withholding of information concerning Plaintiff's intention to retain Ms. Shriver a "life care planner" in the first place.  As described below and as established by the Exhibits hereto, Freedom Air has been diligent in seeking confirmation that plaintiff would retain Ms. Shriver as a life care plan expert so as to allow Freedom Air sufficient notice to locate and retain a rebuttal expert in this discrete field of expertise.  As it turned out, by the time Plaintiff saw fit to disclose Shriver's opinions, Defendants efforts to retain a rebuttal expert were doomed to failure and in fact have failed.  Plaintiff now seeks to be enriched in the amount of $504,000, after successfully engineering the quintessential sandbagging.

## II.   BACKGROUND & ARGUMENT

The following background establishes the chronology of events justifying exclusion of the evidence Shriver intends to offer at trial.

As early as *October 17, 2006* Defendant sought information from Plaintiff on Plaintiff's intention to retain a life care planner. In particular, counsel discussed having any life care planner plaintiff retained interview the plaintiff in Honolulu at the same time plaintiff was in Honolulu for an IME. See Exhibit A, e-mail correspondence from defense counsel Ledger to plaintiff counsel Hasselback. For reasons not particularly pertinent here, those arrangements for Honolulu never materialized. However, it is plainly clear from Exh. A that as early as October 2006, defense counsel wanted to make arrangements for and get the issue of any life care plan experts set up.

In the weeks following October 17, 2007, no progress was made on the issue. Therefore, on January 10, 2007, defense counsel again wrote to plaintiff's counsel to ask about plaintiff's intentions with regard to retaining a life care plan expert, *so as to enable defendant sufficient time to retain a rebuttal expert*. See Exh. B, email correspondence from Ledger to Hasselback.

On January 15, 2007, plaintiff's counsel responded to Ledger's January 10, 2007 e-mail as follows: *"Finally, with regard to a life care planner, we have already provided you with cv of Doris Shriver and we plan to call her as an expert if warranted. [...]. Once [we have spoken to Dr. Hocog] as to Mr. Fejeran's future needs "we will make the final decision regarding Ms. Shriver and let you know whether we intend to seek her opinion."* [2]

Yet for eleven days plaintiff said nothing further to defendant to indicate whether or not Shriver was or would be been retained. Accordingly, on January 26, 2007, Ledger again wrote to Hasselback, stating in part: *"Finally, we need your decision on Shriver at the earliest possible time."* See Exh. D. Again, however, plaintiff provided no information to defendant about Shriver, until months later on April 21, 2007.

---

[2] There is no doubt that plaintiffs lawyers did in fact speak with Dr. Hocog. On March 1, 2007 Dr. Hocog prepared a "medical report" which was provided to defendant. When Dr. Hocog was questioned as to the genesis of his report at his deposition he testified that plaintiffs' lawyers had contacted him and requested the report. Dr. Hocog further testified that to prepare the report he, on two occasions, met with plaintiff to obtain information for the report.

On April 21, 2007, defendant received an unwelcome surprise from plaintiff. That is, a detailed expert witness report from Shriver of 20+ pages with voluminous exhibits. When defendant protested that no notice of Shriver's employment had been given as previously agreed, plaintiff appeared to be amenable to not opposing a defense request for a trial continuance in the event defendant needed additional time to locate and retain a rebuttal expert. In other words, as of April 21, 2007, plaintiff plainly saw that defendant would be struggling against the trial calendar to obtain rebuttal opinion, which in fact, as it turns out, is exactly the case.

In the wake of the unannounced April 21, 2007 surprise disclosure of Shriver's opinions, plaintiff provided defendant with a reference for a rebuttal life care plan expert in Honolulu, Ms. Karen Klemme. After unsuccessful attempts, defendant was finally able to contact Ms. Klemme by e-mail only to learn she was unable to take on any new work until early 2008. Ms. Klemme referred defendant to another person in Honolulu with the needed expertise, Ms. Shelley Hee. Unfortunately, Ms. Hee was likewise unavailable to act as an expert trial witness until, at the earliest, mid-December 2007. Ms. Hee was unable to refer defendant to any other potential experts in the field of medical life care plans.[3]

After several weeks of trying to work out a schedule with plaintiffs' lawyers for the deposition of Ms. Shriver, the deposition was finally scheduled for August 27, 2007 in Portland Oregon.[4] The deposition transcript and exhibits thereto are not yet available but reportedly will be shortly. Among the several revelations by Shriver, a disturbing one was her testimony that

---

[3] Defendant has retained a medical expert, Dr. Peter Diamond. Dr. Diamond reviewed Plaintiffs medical records and performed an IME and will testify as to the results of his opinions. However, Dr. Diamond's comments with regard to the Shriver life care plan are limited to saying that he does not consider plaintiff to be a candidate for a life care plan and would not in his medical practice consider a patient presenting with plaintiff's symptoms to require a life care plan such as prepared by Ms. Shriver. This stops far short of direct rebuttal testimony to Shriver's work.

[4] This proved to logistically challenging as Ms. Shriver resides in Denver, Colorado and keeps a very busy schedule in her work as an expert and consultant. All things considered, including availability of counsel to travel, August 27, 2007 was the earliest time the deposition could take place. Efforts to conduct the deposition in June 2007 were unsuccessful.

she had been retained and instructed to prepare expert opinions as early as ***March 6, 2007***. In addition to her testimony on this, she produced as an exhibit to the deposition her "case intake form" showing her employment by Plaintiff commencing on ***March 6, 2007***. In other words, despite being plainly aware of defendant's need for the earliest possible notice of Shriver being retained to work on this case, so as to permit defendant sufficient time to locate a rebuttal expert, plaintiff did not provide this information on March 6, 2007, **but instead waited six weeks, at which time on April 21, 2007, Ms. Shriver's opinions and voluminous exhibits were delivered in final form**. Once presented with this April 21st "surprise", despite diligent efforts as outlined in the Declaration of David Ledger, defendant was unable to locate and retain a rebuttal expert. In addition to learning the date of Ms. Shriver's hiring by the plaintiff during her deposition, defendant also learned that the subject matter and opinions testified to by Ms. Shriver are highly technical and can only be effectively rebutted and otherwise dealt with at trial by an expert with similar education, background and work history. Defendant has, by plaintiff's intentional withholding of information regarding the commencement of Ms. Shriver's employment, been effectively deprived of such opportunity.[5]

## III.   CONCLUSION

By failing to timely and fairly disclose the employment of Ms. Shriver on March 6, 2007 (as plaintiff agreed to do on January 15, 2007 (Exh. C)) instead waiting to disclose her final opinions on April 21, 2006, plaintiff has effectively blocked defendant from obtaining and presenting expert rebuttal testimony at trial. As such, no doubt plaintiff expects Ms. Shriver to have the proverbial "field day" at trial while defendant is left with no expert to challenge

---

[5] As noted above, Ms. Shriver resides in Denver, Colorado and yet, given her discrete field and expertise, has been retained to work on a case as far away as Saipan. Similarly, in Honolulu, Hawaii, defendant was only able to locate and contact two persons with the credentials to act as an expert in this subject area yet neither one was available to take on this matter until early 2008. These facts make it self-evident that the field of expertise is very limited and the choice of available and qualified experts may only be described as scarce.

1    Shriver's opinions and conclusions.  As plaintiff has on numerous occasions accused defendant

2    of "trial by ambush" for, among other reasons, not disclosing a percipient witness subsequently

3    named in interrogatories (which plaintiff chose not to depose), plaintiffs must now be made to

4    abide by their own declared remedy for such discovery abuse, that is, barring the witness from

5    testifying at trial.  In the circumstances, defendant respectfully request the Court to order that

6    Ms. Shriver may not testify at trial or in the alternative order that defendant be given a full and

7    fair opportunity to locate and retain a rebuttal expert prior to this matter coming on for trial.

8    

9         DATED: Hagåtña, Guam, September 5, 2007.

10   CARLSMITH BALL LLP

11   

12   DAVID LEDGER
     ELYZE J. MCDONALD
     Attorneys for Defendant
13   Aviation Services (CNMI), Ltd.
     dba Freedom Air

**DECLARATION OF DAVID LEDGER**

I, DAVID LEDGER, pursuant to 28 U.S.C. Section 1746 declare under penalty of perjury that the following statements are true:

1.      I have personal knowledge of the facts stated in this declaration.

2.      I would testify competently as to these facts if called by the Court.

3.      I am licensed to practice law before all courts in the Commonwealth of the Northern Mariana Islands and am admitted to this Court.

4.      I am the attorney for Defendant Freedom Air.

5.      This Declaration is filed in support of Defendants' Motion in Limine No. 1 to Exclude Testimony of Plaintiffs' Expert, Doris Shriver; Memorandum in Support of Motion.

6.      Attached hereto marked Exhibit A is a true and correct copy of e-mail correspondence from defense counsel Ledger to plaintiff counsel Hasselback.

7.      Attached hereto marked Exhibit B is a true and correct copy of email correspondence from Ledger to Hasselback.

8.      Attached hereto marked Exhibit C is a true and correct copy of a letter from plaintiff's counsel David Banes to Ledger.

9.      Attached hereto marked Exhibit D is a true and correct copy of a January 27, 2007 e-mail from Ledger to Hasselback.

10.     Immediately after receiving Ms. Shriver's written report on April 21, 2007 defendant sought a rebuttal expert.   Initial efforts were through defendant's insurance representative, who is based in Los Angeles, California.  It was thought that a market the size of Los Angeles would yield the needed expert.  However, it did not.

11.     After the attempt to locate a life care plan expert in Los Angeles proved unsuccessful, I placed phone calls and sent e-mails to Karen Klemme in Honolulu, Hawaii.

Once Ms. Klemme eventually responded, she informed me that her schedule was full and that she was unable to take on any new work until early 2008. Ms. Klemme recommended Shelley Hee as alternative.

12.    Ms. Hee responded to my phone calls and e-mails but like Ms. Klemme was unable to take on a case in the role of a trial expert until, at the earliest, mid-December 2007. When I contacted Ms. Hee she was preparing to leave for China to complete an adoption, following which she would be on maternity leave until mid-December 2007. Ms. Hee was unable to recommend another person as a potential trial expert.

13.    On August 27, 2007 I took the deposition of Doris Shriver during which she disclosed that her employment by plaintiff and opposing counsel commenced on March 6, 2007. Ms. Shriver had in her case file a "case intake form" to confirm this. Had I been informed of this on March 6, 2007, I would have immediately undertaken efforts to locate and return a rebuttal expert.

14.    While deposing Ms. Shriver it was apparent that defendant is prejudiced by the inability to retain and effectively work with a rebuttal trial expert to critique Ms. Shriver's opinions.

Executed: September 5, 2007.

DAVID LEDGER

# EXHIBIT A

# June M.C. Borja

**From:**       David P. Ledger
**Sent:**       Tuesday, October 17, 2006 9:24 AM
**To:**         'George Hasselback'
**Cc:**         June M.C. Borja
**Subject:**    Fejeran v. Freedom Air.
**Attachments:** Amended Case Management Scheduling Order (Freedom Air-Fejeran).doc

Dear George:  Here, again, is the proposed Amended Case Management Order, last sent to you on October 4, 2006.  May I suggest that the time has come to submit the order. Please let me have your comments, if any, or your signature on the document.

Also, I would like to follow up on the discussion we had concerning expert witnesses.  First, though Mr. Perez's report was supposed to be available to us by the end of September 2006, we do not have it.  Please follow up with Mr. Perez and obtain his report for us, so as to permit us to move ahead with our rebuttal work.  Second, what is the status of arrangements to have the life-care evaluation and defendant's IME conducted at the same time in Honolulu, Hawaii, where defendant's medical expert is located ?  We need to come to some sort of arrangements on this and get it set up. We do not anticipate any scheduling difficulties with our medical expert, yet we do need some advance dates to work with.

I look forward to your soonest possible response.

Thank you,

David Ledger
Partner, Carlsmith Ball LLP (Guam, U.S.A.)
Office ph: 671 472 6813, ext. 302
Office fax:  671 477 4375
Mobile:  671 688 3352
dledger@carlsmith.com

***************************************************
NOTICE: This message contains confidential and privileged information. If it has been sent to you in error, please reply to inform the sender of the error and then delete this message. Thank you.
***************************************************

0/17/2006

# EXHIBIT B

**June M.C. Borja**

**From:** David P. Ledger
**Sent:** Wednesday, January 10, 2007 3:58 PM
**To:** 'George Hasselback'
**Cc:** June M.C. Borja
**Subject:** RE:Moses Fejeran v. Freedom Air

George - I am in agreement that it is high-time to move this case along.  However, one of the first things that must happen is that we get the report from your expert Frank Perez.  As you recall, we made the aircraft available to him on extremely short notice several months ago when he happened to be visiting Guam from LA,  but have yet to see his report.  It is prejudicial to our client in that our expert has yet to see the report, let alone inspect the aircraft and prepare a report and rebuttal. This is something that should and would have already occurred had we received the expert report from Mr. Perez in a timely fashion.  It is also prejudicial that we would be required to take and defend fact witness depositions without having the benefit of seeing the expert witness report, whereas we must assume that you know at least the general content of the report and where Mr. Perez is coming from.

As a general matter, the fact witness depositions which need to be done can be done along the lines you suggest, that is, most likely two per day.  However, Freedom Air and its insurance carrier are going to be resistive to providing you with access to Freedom Air employee and a Freedom Air 30b6 representative unless and until you provide the Perez expert report.

Also, what if anything have you decided with regard to retaining a "life care planner" to provide opinion regarding long term health care needs ?  If you are going to do this then we will need rebuttal on the subject.

We are in all likelihood going to arrange an IME in Honolulu  by Dr. Peter Diamond at Honolulu Sports Medical Clinic.  Please provide me with dates on which your client Mr. Fejeran is available to travel and attend an IME.

The IME and the expert witness reports are essential to any evaluation of the case for settlement whether it be responding to a demand or making an offer, even more so that the fact witness depositions as I doubt either of us will be surprised by the testimony.

Thanks & regards,

David Ledger
Partner, Carlsmith Ball LLP (Guam, U.S.A.)
Office ph: 671 472 6813, ext. 302
Office fax:  671 477 4375
Mobile:  671 688 3352
dledger@carlsmith.com

******************************************************
NOTICE: This message contains confidential and privileged information. If it has been sent to you in error, please reply to inform the sender of the error and then delete this message. Thank you.
******************************************************


**From:** George Hasselback [mailto:george.hasselback@gmail.com]
**Sent:** Monday, January 08, 2007 4:39 PM
**To:** David P. Ledger
**Subject:** fejeran v. freedom air

David,

You should be receiving that short set of discovery requests that I mentioned a few months ago right before we got the discovery calendar changed.  Since our discovery cut-off is May, I think we should get going on the fact depositions as well.  What does your schedule look like in the following weeks?  Since my clients are both here, I would think that you would like to conduct their depositions on the same day to save time (presuming that we could get them both done

1/11/2007

on the same day that is). I think that w̲ ̲.hould be able to do both of the FA emp ̲yees on the same date, so if you could suggest some dates that would be great. I would like to wait for the responses to these latest discovery requests to perform the 30(b)(6) deposition of your client, so that would put it in mid to late February at the earliest.

If you have any other suggestions about the fact witness discovery, let me know. Otherwise, I look forward to hearing from you with some suggested dates.

George.

--
George LLoyd Hasselback, Esq.
O'Connor, Berman, Dotts & Banes
Second Floor, Nauru Building
P.O. Box 501969
Saipan, MP 96950-1969
Phone: (670) 234-5684
Fax: (670) 234-5683

This message originates from the law firm of O'Connor, Berman, Dotts & Banes. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. All personal messages express solely the sender's views and not those of O'Connor, Berman, Dotts & Banes. This message may not be copied or distributed without this disclaimer. If you received this message in error, please delete this message immediately and inform the sender of the error.

Thank You

/11/2007

# EXHIBIT C

# O'CONNOR BERMAN DOTTS & BANES
## ATTORNEYS AT LAW

**GUAM OFFICE**
Suite 503, Bank of Guam Bldg.
111 Chalan Santo Papa
Hagåtña, Guam 96910
Telephone: (671) 477-2778
Fax: (671) 477-4366
E-mail: bermlaw@kuentos.guam.net

**SAIPAN OFFICE**
Second Floor, Nauru Building
P.O. Box 501969, Saipan, MP 96950-1969
Telephone: (670) 234-5684/5
Fax: (670) 234-5683
E-mail: attorneys@saipan.com
Website: www.pacific-lawyers.com

**POHNPEI OFFICE**
Ocean View Plaza - East Wing
P.O. Box 2069, Pohnpei,
Federated States of Micronesia, 96941
Telephone: (691) 320-6450
Fax: (691) 320-6451
E-mail: msipos@mail.fm

January 15, 2007

**Delivered by Telecopy**

David Ledger, Esq.
Carlsmith Ball LLP
P.O. Box 54
Hagatna, Guam
Fax No. (671) 411-4375

Re: *Fejeran v. Freedom Air Discovery Scheduling*

Dear David:

George will be preparing for a trial in District Court here in the CNMI, so I will be handling the arrangements for proceeding with discovery in this case.

Firstly, with regard to Mr. Perez's report, we have not provided it to you because he has not, as of yet, formulated a written report. Pursuant to the Amended Case Management Scheduling Order, we have until June 1, 2007 to complete expert depositions. Since this new Order does not set any new deadlines for disclosure of expert reports, we have not, as of yet, been obliged to do so. However, I believe that we should agree to a set of deadlines for exchange of expert reports (as we have already made a partial disclosure of their resume's).

Therefore, allow me to suggest that we attempt to mirror the Court's previous Case Management Scheduling Order and count backwards from the date by which expert discovery is to be completed. That would make for a final disclosure of Plaintiff's experts (to include their written reports) by March 1, 2007 with Defendant's remaining expert disclosures by April 2, 2007. This would give us the two months contemplated by the original order to complete expert depositions and the like. Meanwhile, we can conduct the deposition of the fact witnesses. Let me know what you think of this arrangement and we can proceed.

Since you expressed some reservation as to conducting the deposition of your client's employees, I can tell you, that after his inspection of the stairs, Mr. Perez has come to the general conclusion that they are unreasonably unsafe because of the measurements of their rise and run. He also has concerns about the "railings" but needs more information which we hope to get from the depositions, etc. I hope that this is

sufficient to enable us to proceed with some of the fact depositions before the exchange of expert reports. Please let me know.

Secondly, you had asked about dates upon which Mr. Fejeran would be willing to travel to Hawaii for an IME. I have spoken to Mr. Fejeran and he is currently unwilling to travel that far. Extended periods of sitting or standing in the same position put a strain on his knee and this, in turn, causes him quite a bit of discomfort. Therefore, I suggest we make arrangements to conduct Mr. Fejeran's IME here in the CNMI. He does have some flexibility in his availability, so we would be happy to make reasonable accommodations for your examiner's schedule, given sufficient notice.

Finally, with regard to a life-care planner, we have already provided you with the cv of Doris Shriver and we plan to call her as an expert if warranted. As Mr. Fejeran is still treating at the Commonwealth Health Center with Dr. Hocog (one of the physicians in our updated disclosure), we must speak with him before Ms. Shriver can formulate her opinions as to Mr. Fejeran's future needs. We are currently trying to contact Dr. Hocog, but he is apparently off-island on an extended holiday. We have been told that he will be back in his office this week and I hope to speak with him then. Once that has been done, we will make the final decision regarding Ms. Shriver and let you know whether we intend to seek her opinion or not.

Thanks again David for your efforts and cooperation in this case. I am sure we can continue to cooperate to accommodate each other and get this moving. If you have any questions, please don't hesitate to contact me.

Truly yours,

David G. Banes

3189-01-070115-Ltr-DLedger-glh

2

# EXHIBIT D

**June M.C. Borja**

**From:**     David P. Ledger
**Sent:**     Friday, January 26, 2007 4:18 PM
**To:**       'George Hasselback'; 'O'Connor Berman Dotts & Banes'
**Cc:**       June M.C. Borja
**Subject:**  Fejeran v. Freedom Air

Attention of George Hasselback and David Banes:

Gentlemen: I have your letters date January 15 & 17, 2007.  I intended to respond sooner but was unable to do so before now.  I will respond to the points raised in your letters in basically the same order as they are presented.

At this point what was contemplated by each side with regard to the time for Mr. Perez to disclose his report appears to be in question, but that was not always the case. Given that Mr. Perez had access to the aircraft approximately six months ago on August 1, 2006, we certainly did not expect to be waiting until March 1, 2007 for his report. I believe your correspondence file will reflect our expectation of having his report in a much more timely manner, in particular, by the end of September 2006. Specifically, soon after Perez' inspection in August 2006 I wrote to Mr. Hasselback asking for confirmation that Mr. Perez had been retained and requested a timeframe within which to have his report. Subsequently, on October 17, 2006, I wrote in e-mail to Mr. Hasselback concerning our informal agreement that Mr. Perez's report was to have been given to us by *the end of September 2006, and that we were concerned about having sufficient time for rebuttal work.*  A September 30 disclosure would have given Mr. Perez two months to complete his report, August and September.  My personal notes of conversations with Mr. Hasselback during the time between Perez's August inspection and my October 17 e-mail reflect the September 30 disclosure agreement.  If you have correspondence which shows otherwise please provide it.

The schedule you have proposed for exchanging expert witness reports provides you with a tremendous strategic advantage that must be addressed in a manner which is fair to my client.  The obvious part is that by the time March 1, 2007 rolls around and Mr. Perez produces his report, he, and you, will have had more than *seven months* to contemplate the content of report, whereas you are proposing that our expert be given *one month* to travel to Guam, inspect and photograph the aircraft, prepare a report, and prepare a rebuttal report.  Are you seriously proposing that this is a fair resolution ?  If you are then as they say, no good deed goes unpunished, in particular our having consented to Mr. Perez's inspection in August 2006 while counting on him and you to respond to our informal agreement to produce the report by the end of September 2006.  The schedule for expert witness disclosures proposed by you is, for the foregoing reasons, unacceptable.

That you disclose Mr. Perez' concerns about the height of risers, width of treads, and the railing comes with little surprise or solace since those items were quite obviously the focus of his inspection, which I attended and observed but you did not except through a summer hire working for Dan and Michael Berman.  Mr. Perez took multiple measurements and photographs of these items and repeatedly went up and down the stair. Last, with regard to discovery you claim to need to supplement what Mr. Perez already knows, please allow me to point out that I have lost count of how many times during the first five or six months of 2006 I agreed to Mr. Hasselback taking depositions of Freedom Air employees, only to never see any of them be Noticed.

Turning to the IME we have requested in Honolulu, your proposal that it be conducted in the CNMI is likewise unacceptable. For starters, Mr. Hasselback has known for several months that our medical expert is in Honolulu, and that we would schedule the IME during the same time Mr. Hasselback was considering to have Mr. Fejeran in Honolulu to be interviewed by Ms. Shriver.  We were in agreement that killing two birds with one air travel trip made good sense.  Mr. Hasselback agreed that having the IME and Shriver interview in Hawaii at the same time made good sense, and no mention was ever made about the plan being contingent on Mr. Fejeran's ability to travel. Rather, the contingency was always your need for Shriver and if you did not need Shriver then my client would have to pay the entire cost of Mr. Fejeran's trip to Honolulu. Mr. Fejeran's inability or unwillingness to travel, now that you no longer need him to go there, does not ring very true.  From our perspective it appears your intention is to deny us the opportunity to complete our medical expert work which needs to wind up with the IME at Dr. Diamond's office in Honolulu.  It is disingenuous to think we are going to bring our medical expert to Saipan to conduct an IME, at a cost approaching $8,000, when the cost to have Mr. Fejeran go to Honolulu will be approximately $2,500.  Furthermore, Mr. Hasselback clearly understood and conceded that the IME in Honolulu was a reasonable alternative to a local IME, given that there were basically no available local doctors to perform it.

Shifting to your January 17 letter, you correctly note no court-imposed deadline for expert witness disclosures. There is a good reason for that.  As noted above, counsel had an informal agreement to disclose Perez's report approximately sixty days after his inspection, that is, the end of September 2006.  Again, I refer you to my e-mail of October 17, 2006 to Mr. Hasselback.  You also make note of the "additional expense" you will incur to obtain an interim report from Mr. Perez.  Please allow me to inform you that the basis of having Mr. Perez inspect the aircraft in August 2006 on short notice was that he "happened to be on Guam"

and that an inspection then rather than lat̶e̶r̶ ̶w̶ould save plaintiff thousands of dollars. ̶ ̶ ̶ ̶ ge Munson agreed with the premise that saving money on experts when saving was possible made good sense for everyone and made it clear that he would have granted an emergency motion to inspect had we not consented. I would venture a guess that you will still be dollars ahead after paying for an interim report. In any event, please do not assume that an "interim report" will solve the problems as we see them.

Bottom line is that we consider Mr. Perez's report to have been due to us September 30, 2006. I am confident my October 17, 2006 e-mail and personal notes will establish this. Otherwise, one would have to assume that my October 17 e-mail referencing an end-of-September disclosure was written during a spell of dementia. In the circumstances, I am of the mind that our refusal to produce our witnesses for deposition, which by your own admission are in part to assist Mr. Perez, is justifiable.

Unfortunately, we do not see how we can possibly agree with the alternatives you have suggested to resolve present discovery issues. Even more unfortunate is that Judge Munson is on medical leave and apparently unavailable for a status conference or to otherwise solve the issues until sometime after March 8, 2007. You have proposed disclosing Perez's report by March 1, 2007. If you do so that may render certain issues moot, but still not others. As for the IME, our perspective is that it be competed in Honolulu as previously planned whether or not Mr. Fejeran will see Ms. Shriver at the same time.

Finally, we do need your decision on Shriver at the earliest possible time. 

Regards,

David Ledger
Partner, Carlsmith Ball LLP (Guam, U.S.A.)
Office ph: 671 472 6813, ext. 302
Office fax: 671 477 4375
Mobile: 671 688 3352
dledger@carlsmith.com

*************************************************************
NOTICE: This message contains confidential and privileged information. If it has been sent to you in error, please reply to inform the sender of the error and then delete this message. Thank you.
*************************************************************

1

**CERTIFICATE OF SERVICE**

2        The undersigned hereby certifies that on the 5th day of September, 2007, I will cause to

3    be served, via electronic filing/service, a true and correct copy of **DEFENDANTS' MOTION**

4

**IN LIMINE NO. 1 TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT, DORIS**

5

**SHRIVER; MEMORANDUM IN SUPPORT OF MOTION; DECLARATION OF DAVID**

6

7    **LEDGER; EXHIBITS A - D; DECLARATION OF SERVICE** to the following Counsel of

8    record.

9                    David G. Banes, Esq.

                     O'Connor Berman Dotts & Banes

10                Second Floor, Nauru Building

                     Post Office Box 501969

11                Saipan, MP 96950

12

13      DATED:  September 5, 2007.

14

15                         DAVID LEDGER

16

17

18

19

20

21

22

23

24

25

26

27

28